555 A.2d 1089

**Walter Thurman HAMILTON**

v.

**STATE of Maryland.**

**No. 1133, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

April 4, 1989.

Certiorari Denied July 21, 1989.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr.,

State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before WILNER, BISHOP and FISCHER, JJ.

WILNER, Judge.

A jury in the Circuit Court for Prince George's County found appellant guilty of first degree rape, kidnapping and assault with intent to disable. For those crimes, he was sentenced to life imprisonment.

Appellant makes three complaints in this appeal, but we need consider only one—that the court erred in permitting him to testify even though there were indications that he did not fully understand the scope of his right to remain silent.

Since 1876, a defendant in a criminal case has had a statutory right in Maryland to testify in his own defense. *See Mayfield v. State,* 56 Md.App. 541, 468 A.2d 400 (1983). That right is now regarded as a Constitutional one. *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Antedating that right, however, by 100 years, is the right to refrain from testifying. Since 1776, this State has subscribed to the proposition "[t]hat no man ought to be compelled to give evidence against himself" in a criminal case. Maryland Declaration of Rights (1776), art. 20. That privilege, which has remained consistently a part of our State Constitution (Maryland Declaration of Rights, art. 22), is also, of course, afforded by the Fifth Amendment to the United States Constitution, made applicable in State proceedings through the Fourteenth Amendment.

Those two rights, each of Constitutional dimension, are necessarily in conflict. A defendant must choose between them. If he elects to testify, and thus subject himself to the possibility of self-incrimination through cross-examination, he gives up—waives—his equal but opposite right to refrain from compelled self-incrimination; if, on the other hand, to avoid that prospect, he elects not to testify, he

obviously gives up—waives—his right to tell from his own lips his side of the story.

Precisely because the election of one of these Constitutional rights acts as a waiver of the other, the decision to choose between them is a critical one for the defendant and must therefore reflect, at a minimum, an awareness of these correlative rights and a basic understanding of what each entails.

One of the clear, fundamental attributes of the right to remain silent—not to testify—is that no inference of guilt arises from the exercise of that right, and that, at least on request, the jury would be so instructed. *See* Md.Cts. & Jud.Proc.Code Ann. § 9–107; *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Carter v. Kentucky,* 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). Although, as we pointed out in *Martin v. State,* 73 Md.App. 597, 535 A.2d 951 (1988), there are a number of other factors that a defendant might want to know about and consider in deciding whether to testify, this is one that he *must* be informed of and hopefully will consider.

 When a defendant is represented by counsel, the court may generally assume that the defendant has been advised of his rights in this regard and need not, itself, inquire into the matter. *Stevens v. State,* 232 Md. 33, 39, 192 A.2d 73, *cert. denied* 375 U.S. 886, 84 S.Ct. 160, 11 L.Ed.2d 115 (1963). Only when the defendant is unrepresented by counsel does the court have a positive duty to inform the defendant of his correlative rights, and, even in that setting, the duty is a limited one. As we said in *Martin v. State, supra,* 73 Md.App. at 603, 535 A.2d 951:

"If a defendant knowingly and voluntarily elects to ... proceed without counsel, he cannot expect the judge to become his lawyer. Informing him that he has a right not to testify *and that no inference of guilt can be drawn if he exercises that right* suffices, we think, to

allow him to make an intelligent—if not a wise—decision whether to testify."

(Emphasis added.)

The instant case represents a hybrid situation in which (1) the defendant was, in fact, represented by counsel, thereby excusing the court from any duty to advise him, (2) the court decided nonetheless to question the defendant to assure that he actually understood that he had a right not to testify, and (3) the defendant's answers to the court's questions raised a clear and considerable doubt whether he really did understand the nature of his privilege and the consequences of exercising it.

It was evident from the beginning that appellant had a limited intellectual and comprehension ability. Before the commencement of trial, counsel asked the court to reopen a suppression hearing to allow appellant's mother to testify. In that regard, he proffered to the court that "[t]he mother can testify as to his inability to understand what's going on at that time and at this time...." The court declined to hear from the mother. When it came time for appellant to decide whether to testify, this colloquy occurred:

"THE COURT: Mr. Hamilton, has your lawyer told you that you have a constitutional right not to take the stand and testify? Has he advised you of that?

MR. DITRANI [Defense Counsel]: Do you know what the Judge is saying?

THE COURT: Just a minute, please.

MR. DITRANI: I'm sorry, Your Honor.

THE COURT: Has he told you about that you don't have to take the stand and testify?

THE DEFENDANT: Not exactly.

THE COURT: What did he tell you?

THE DEFENDANT: What do you mean?

THE COURT: What did he tell you about taking the stand? Did he tell you that you had to take the stand or that you didn't have to take the stand? What did your lawyer tell you?

THE DEFENDANT: That I probably would be asked to take the stand.

THE COURT: All right. Now did he also tell you that you didn't have to take the stand?

THE DEFENDANT: Um-hmm.

THE COURT: He told you that. Okay. *Did he advise you that if you didn't take the stand that this jury couldn't get any inference of guilt as to whether or not you were guilty because you didn't take the stand? Did he tell you about that?*

THE DEFENDANT: *I don't understand.*

THE COURT: All right. Do you want to take the stand and tell your side of the story?

THE DEFENDANT: Sure.

THE COURT: Do you want to take the stand?

THE DEFENDANT: Yes.

THE COURT: You understand that you do not have to take the stand and tell your side of the story, but you do want to take the stand, and you fully understand if you take the stand, this lady [the State's Attorney] can ask you anything she wants to ask you about this particular evening? Do you understand that?

(The Defendant nodded.)

THE COURT: You have to say yes.

THE DEFENDANT: I'm sorry."

(Emphasis added.)

Ignoring counsel's earlier proffer as to appellant's limited intellectual capacity, which was confirmed as soon as he began to testify,[1] it is evident, just from this colloquy, that

---

1. In the introductory part of his testimony, appellant said that he was 18 years old, that he had an 8th grade education, and that he could not read or write very well. His most recent schooling was at the Regional Institute for Children and Adolescents at Cheltenham, a facility serving severely emotionally disturbed teenagers. His responses to counsel's questions were imprecise, prompting counsel to proffer at a bench conference: "We went through some of this during the suppression hearing. He's very slow and he has a hard time understanding. I don't want to lead him. On the other hand, I'm

appellant did not understand that no inference of guilt would arise from his failure to testify and that the jury would be so instructed. That, as we have said, is a critical factor that must be weighed by a defendant and is one of the few things that must be explained by the court, *sua sponte*, to an unrepresented defendant. *Martin v. State, supra,* 73 Md.App. 597, 535 A.2d 951. Unfortunately, the court did nothing to allay the uncertainty but moved on to inform appellant that, if he testified, he would be subject to cross-examination.

Because appellant was represented by counsel, the State refers us to *State v. McKenzie,* 17 Md.App. 563, 574, 303 A.2d 406 (1973), for the proposition that "the voluntary assumption of the witness stand by an accused, to testify in his own defense, is *ipso facto,* all the waiver that is required of the privilege ... against compulsory self-incrimination." Building on *McKenzie,* the State suggests that the presumption that an accused has been apprised of his rights by his attorney is, in effect, irrebuttable, even where the record indicates that he has not been so informed or does not understand what his attorney has told him. We cannot endorse that proposition. It is an unwarranted extension of a case whose own virility has been sapped. We need to take a fresh look at things.

We return first to *Stevens v. State, supra,* 232 Md. 33, 192 A.2d 73. The complaint there was that the record failed to show affirmatively that a defendant, represented by counsel, had been advised *by the court* of his right not to testify. The Court found no error, stating at 39 of 232 Md., 192 A.2d 73:

> "Most jurisdictions which have considered the point have held that failure by a trial court to advise a defendant not represented by counsel of his right to refuse to take the witness stand constitutes prejudicial error. However, we do not deem it essential for the protection of a defen-

---

going to find myself in that position. He doesn't understand half of what you ask him."

dant's constitutional rights that he be advised by the court of his right against self-incrimination when he is represented by counsel. In *Woodell v. State,* 223 Md. 89, 95, 162 A.2d 468 (1960), we recognized the fact that attorneys, whether employed by the accused or court appointed, are officers of the court and are presumed to do as the law and their duty require them. Where the accused has counsel, *it is to be presumed that the accused has been informed of his rights* and that when he voluntarily takes the stand he waives the protection of the constitutional and statutory provisions. Here, the appellant was called to the stand by his counsel and in such a case there is no requirement that the court advise him of his right to refuse to testify."

(Citations omitted; emphasis added.)

Though establishing this "presumption," the *Stevens* Court did not suggest that the presumption was, in any sense, irrebuttable; nor, of course, did it indicate what the trial court should or must do if it *is* rebutted. The presumption was based on the supposition noted in the preceding sentence that attorneys "are presumed to do as the law and their duty require them."

In *Fowler v. State,* 237 Md. 508, 515, 206 A.2d 802 (1965), the claim was made that the defendant had not been advised *by trial counsel* of his right to refuse to testify in his own behalf. This seemed to be part of a broader claim of incompetence of counsel and thus rested on a Sixth, rather than Fifth, Amendment basis. Citing *Stevens,* the Court noted the presumption that a represented defendant has been informed of his rights, but its disposition of that aspect of the challenge rested on the Court's finding that "[t]here is nothing in this record to indicate that the accused was not fully informed of his rights by counsel." *Id.* There was nothing, in other words, to rebut the presumption. *See also Miller v. State,* 32 Md.App. 482, 488, 361 A.2d 152, *cert. denied* 287 Md. 728 (1976), *cert. denied* 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 357 (1977); *Ferrell v.*

*State,* 73 Md.App. 627, 641, 536 A.2d 99, *cert. granted* 312 Md. 427, 540 A.2d 489 (1988).

We went a step further in *McKenzie.* In an earlier direct appeal from his conviction, McKenzie had complained that he was entitled to a new trial because he had been allowed to testify without being advised on the record of his right to refuse to testify. As that complaint had not been made at trial, however, we declined to consider it, leaving McKenzie to his relief under post-conviction procedures. He then sought such relief, and what emerged was essentially this: (1) McKenzie was not, in fact, advised of his right to refuse to testify, by counsel, by the court, or by anyone else; (2) he may have known of that right in any event—at least there was no finding that he did not; (3) he elected to testify and made clear that he would have testified even if he had been told of his right to remain silent; (4) counsel made the decision to have McKenzie testify, stating that, in a case such as McKenzie's, where self-defense was an issue, "it was his practice to put the defendant on the stand"; (5) McKenzie did not, in fact, incriminate himself in his testimony; and (6) he had no prior criminal record to be revealed on cross-examination. Nonetheless, the trial court ordered a new trial, solely on the basis that no one had informed McKenzie of his right not to testify.

We reversed, concluding that no Constitutional error had occurred. The basis of our holding was that the question of whether the defendant should or should not testify was a tactical decision to be made by counsel rather than by the defendant. At 584 of 17 Md.App., 303 A.2d 406, we held flatly that "the decision to place a defendant on the stand is a decision properly vested in the attorney himself and not in his client." We regarded this as a "trial decision" rather than a "fundamental right," concluding, at 586, 303 A.2d 406, that "[w]hen the attorney makes the determination that a defendant's testimony is crucial to a proper presentation of the defense, the decision to put the accused on the stand is properly one of 'trial tactics.'" On that premise, we found no fault with McKenzie's "election" to testify.

There was a dissent in *McKenzie*. Judge Davidson asserted that the Court's rationale was contrary to what the Court of Appeals had said in *Stevens*. At 601, she explained:

"*Stevens* states that it is the duty of counsel to inform the defendant of his rights. While it holds that the performance of the duty may be presumed, *Stevens* does not hold that the presumption is irrebuttable or that rebuttal of the presumption is immaterial. The majority dismisses the Court of Appeals' rationale for its conclusion in *Stevens* in favor of a 'sounder' rationale never before expressed by any court, from which it concludes that a lawyer has no duty to advise a client of his right not to take the stand.

Moreover, there is substantial authority that the decision whether or not to testify is both a fundamental and personal right of the accused in a criminal case."

Subsequent history has shown Judge Davidson's view to be the correct one in this regard. In *Curtis v. State*, 284 Md. 132, 144, 395 A.2d 464 (1978), the Court, through its citation of *Emspak v. United States*, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955), suggested that the privilege against self-incrimination was one of those basic rights to which the concept of waiver enunciated in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1983) applied—i.e., "an intentional relinquishment or abandonment of a known right or privilege." We held that to be so in *Martin v. State, supra*, 73 Md.App. at 602, 535 A.2d 951. In *Rock v. Arkansas, supra*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37, as we indicated, the Supreme Court made clear that the decision to testify or not to testify represents a fundamental Constitutional right. And, most recently, in *Treece v. State*, 313 Md. 665, 674, 547 A.2d 1054 (1988), the Court of Appeals, citing *Rock v. Arkansas*, included that decision among those that ultimately must be made by the defendant himself and not by counsel. It is evident, then, that the principal underpinning of *McKenzie* has been discarded, and with that necessarily goes much of

the value of that case as a building block for extending its holding.

Neither *Rock v. Arkansas* nor *Treece v. State* goes so far as to remove the presumption that a represented defendant has been properly advised by his attorney of his right to testify or remain silent. But they certainly do undercut any notion that such a presumption is irrebuttable or may be relied upon when the evidence suggests a contrary fact.

Irrebuttable presumptions raise serious due process questions under the Fifth and Fourteenth Amendments in any case and are certainly not favored. *See Vlandis v. Kline,* 412 U.S. 441, 446, 93 S.Ct. 2230, 2233, 37 L.Ed.2d 63 (1973) and cases cited therein. This is especially true where the presumption itself directly implicates a Constitutional right. Accordingly, although we adhere to the view that, normally, a court may assume that a represented defendant has been properly advised by his attorney of his right to testify or refrain from testifying and need not make any inquiry at all on the matter, if, through such an inquiry or otherwise, it appears to the court that either such advice was not, in fact, given or that the defendant does not understand what he has been told, the court cannot simply ignore that fact. The presumption has then been rebutted, and the court must take some further action to assure itself that the defendant *is* properly advised and *does* understand the nature and consequences of the election he must make.

When facing that situation, the court may, conceptually, proceed in one of two ways: it may interrupt the proceeding long enough for client and attorney to confer on the matter, to give the attorney another chance to inform the defendant about the choice he faces, or it may proceed on its own to inform the defendant, as though the defendant were unrepresented. Absent some extraordinary, compelling circumstance, the nature of which we cannot at present foresee, we believe that the former approach should, in fact, be the one used. For all the reasons we noted in *Martin v. State, supra,* 73 Md.App. at 603–04, 535

A.2d 951, it is far better for counsel to discuss the matter with the client than for the court to undertake that responsibility. After such a conference, the court should, as a precautionary measure, make certain that the defendant then understands his correlative rights.

■ On this record, we cannot conclude that appellant's decision to testify was made knowingly and intelligently. Consequently, we must reverse and remand for a new trial.

JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR NEW TRIAL; PRINCE GEORGE'S COUNTY TO PAY THE COSTS.