701 A.2d 847

**Montro Lorell TILGHMAN**

v.

**STATE of Maryland.**

**No. 856, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Oct. 29, 1997.

Christopher A. Griffiths (Roberts & Wood, on the brief), Riverside, for Appellant.

Mary Ann Ince, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Michael C. Maloney, State's Attorney for Dorchester County, Cambridge, on the brief), for Appellee.

Argued before HARRELL, SALMON and BYRNES, JJ.

BYRNES, Judge.

A jury in Dorchester County convicted appellant Montro Lorell Tilghman of robbery with a deadly weapon, robbery, carrying and wearing a handgun, use of a handgun in the commission of a robbery, theft, assault, and battery. After merging what it determined to be the lesser included offenses, the trial court sentenced appellant to fifteen years imprisonment for robbery with a deadly weapon, a consecutive ten years for use of a handgun in the commission of a robbery, and concurrent terms of ten and three years for battery and carrying and wearing a handgun, respectively.

Appellant presents three questions for review, which we have combined and reworded for clarity:

I. Did the trial court err in not taking action to assure that appellant was properly advised of the risk of impeachment attendant to exercising his constitutional right to testify, before appellant waived that right?

II. Did the trial court err in sentencing by a) failing to merge appellant's conviction of battery into his conviction

for robbery with a deadly weapon? and b) failing to merge appellant's conviction for carrying and wearing a handgun into his conviction for use of a handgun in the commission of a crime of violence?

We answer "no" to question one and affirm the judgments. With respect to question two, we find that the trial court did not err in imposing the sentence for battery but did err in sentencing appellant for carrying and wearing a handgun; accordingly, we vacate that sentence.

## FACTS

In the early morning hours of July 23, 1995, Dwayne T. Batson was sitting on the wall of the Pine Street amphitheater in the town of Cambridge, taking a break from riding his mountain bike. Appellant approached Batson with a handgun and demanded that he turn over the bicycle. Batson resisted at first, but then complied. Appellant took the bike and left.

Batson walked to the next street, where he encountered a woman whom he recognized to be a friend of appellant. As Batson and the woman were engaged in conversation, appellant suddenly reappeared, holding a wooden board in one hand and the handgun in the other. Appellant charged after Batson, who ran. Appellant gave chase, eventually catching up to Batson, who then hit appellant with his fist. Appellant dropped the board, fell to his knees, and shot Batson in the right thigh with the handgun. Batson fled, with appellant still shooting at him. He found his bicycle in some bushes, and rode it to his girlfriend's house. His girlfriend called the police and an ambulance, which transported Batson to the hospital, where he was admitted for treatment. The police interviewed Batson at the hospital. Batson told them that he had been robbed and shot by a person named "Montro." The police compiled a photographic array, from which Batson identified appellant as his assailant.

On September 20, 1995, appellant was charged by information with robbery with a deadly weapon; robbery; assault with intent to rob; assault with intent to murder; two counts

of carrying and wearing a handgun; two counts of use of a handgun in the commission of a crime of violence (one each for the robbery and assault with intent to murder charges); theft under $300.00; reckless endangerment; assault; and battery. Counsel entered her appearance on appellant's behalf on October 24, 1995 and, the following month, filed a motion challenging appellant's competency to stand trial.

On December 22, 1995, Donald W. Nachand, Ph.D., of Clifton T. Perkins Hospital Center, examined appellant and determined that he was competent to stand trial under the standards set forth in *Health General* §§ 12–101, *et. seq.* of the Maryland Code Annotated (1994 Repl.Vol.). In his December 27, 1995 report, Dr. Nachand assessed appellant as follows:

> The defendant is a 24 year old male with a sixth grade educational level. He has an established diagnosis of mild mental retardation, and he is illiterate. He is also reported to have had transient psychotic episodes in the past, but this is not a current problem. In interview today the defendant is alert and adequately oriented. Both recent and remote memory are intact. His speech is clear and fluent, and his responses are relevant and coherent. There is no appearance of delusion or hallucination. He expresses no unusual thought content. His mood is baseline and the underlying affect tone is normal. There is no unusual elevation of anxiety. He has an adequate understanding of the charges placed against him and of the possible consequences. He has an adequate understanding of the basic legal procedure. He appears capable of cooperating with his attorney in the preparation of his defense.
>
> IMPRESSION: Mild mental retardation.

Appellant's counsel stipulated to Dr. Nachand's report, and on January 18, 1996, the trial court ruled that appellant was competent to stand trial.

When the case was called to trial, on April 18, 1996, the State entered a *nolle prosequi* to the assault with intent to rob and reckless endangerment charges. At the close of the

State's case, the trial court granted appellant's motion for judgment of acquittal as to one charge of carrying and wearing a handgun. The trial judge then asked appellant's counsel, "Would you like to advise your client?" Counsel took a moment to confer with appellant, and the following colloquy ensued: [1]

COUNSEL: Mr. Tilghman, you and I have previously discussed your right to testify, is that correct?

APPELLANT: Yes.

COUNSEL: And you understand that you have a constitutional right to testify today if you so choose?

APPELLANT: Yes, Ma'am.

COUNSEL: And you understand that if you choose to testify the state attorney may cross-examine you and the court might ask you questions for clarification?

APPELLANT: Yes.

COUNSEL: Do you understand if the States Attorneys cross exams you here, and if it's indicated to me that you have a prior conviction that he will ask you about those convictions?

APPELLANT: Yes.

COUNSEL: And do you understand that you also do not have to testify today?

APPELLANT: Yes.

COUNSEL: That if you decide you do not want to testify I'll ask the judge to give the jury instructions that says just because you didn't testify doesn't mean your guilty, that the jury can't ask that at all?

APPELLANT: Yes, Ma'am.

COUNSEL: And that I would ask the judge to give that instruction and he would give that instruction?

APPELLANT: Yes.

---

1. The colloquy is reproduced exactly as it appears in the court transcript.

COUNSEL: And, is it correct you and I have talked about whether or not you wish to testify or not?

APPELLANT: Yes.

Appellant did not testify. The defense called three witnesses, two of whom were relatives of appellant; the other was a casual acquaintance. All three testified that they had witnessed an altercation between appellant and Batson, during which shots rang out, and that appellant was not carrying a gun at the time.

The jury acquitted appellant of assault with intent to murder and use of a handgun in the commission of that crime and convicted him of all of the remaining charges. The trial court merged the robbery and theft convictions into the robbery with a deadly weapon conviction and merged the assault conviction into the battery conviction. It then sentenced appellant as described above. This appeal followed.

## DISCUSSION

### I

At the time of trial, appellant's criminal record listed two convictions for possession of cocaine; two convictions for battery; and one conviction each for cruelty to animals, assault, resisting arrest, and burglary.[2] In her on-the-record advice to appellant about his right to testify, counsel commented upon his risk of being impeached with his prior convictions. Appellant now contends that the advice that his attorney gave him about impeachment was legally incorrect in that it implied that, if he were to testify, all of his prior convictions could be used to impeach his credibility, when that

---

2. The burglary conviction, which occurred in 1989, was the earliest of appellant's convictions. In 1989, burglary was still a common law crime in Maryland. The burglary statute then in existence pertained only to punishment. In 1994, the statutory provisions pertaining to burglary were repealed and a comprehensive legislative scheme was enacted, establishing four degrees of burglary, as well as related offenses. *Md.Code Ann.*, Art. 27, §§ 28–35B (1996 Repl.Vol.).

was not the case.[3] He maintains that, as soon as the trial court heard counsel impart this erroneous advice, it was required to intervene to assure that he was properly informed about the risk of impeachment that he might face on the witness stand. This was especially so, appellant contends, given that the trial judge knew that he was mildly mentally retarded and had invited counsel to place her advice to appellant on the record.[4] Finally, appellant concludes that the trial court's error in failing to intervene prejudiced him by causing him ineffectively to waive his constitutional right to testify.

---

3. The "eligible universe" of criminal convictions that may be admissible for impeachment purposes encompasses "infamous crime[s]" and "other crime[s] relevant to the witness's credibility." *State v. Giddens*, 335 Md. 205, 213, 642 A.2d 870 (1994); Md. Rule 5–609(a)(1). "Infamous crimes" include treason, common law felonies, and other crimes that involve some element of "deceitfulness, untruthfulness, or falsification bearing on the witness's propensity to testify truthfully." *Id.* n. 5, quoting, *Beales v. State*, 329 Md. 263, 269–70, 619 A.2d 105, 108(1993).

 Assault and battery are not infamous crimes and are not crimes relevant to credibility; therefore, appellant's convictions for those crimes could not have been used for impeachment. *State v. Duckett*, 306 Md. 503, 512, 510 A.2d 253, 257–58 (1986). Likewise, appellant's convictions for simple possession of narcotics were not admissible for impeachment purposes. *Morales v. State*, 325 Md. 330, 339, 600 A.2d 851, 855 (1992). By contrast, the common law crime of burglary is a felony. *Reagan v. State*, 4 Md.App. 590, 244 A.2d 623 (1968). Appellant concedes that his burglary conviction was an impeachable offense, and that it occurred within fifteen years of the time of trial. Md. Rule 5–609(b). He suggests that the court might have ruled it inadmissible, however, on the ground that its probative value was outweighed by its prejudicial effect. Md. Rule 5–609(a)(2). Cruelty to animals is not an infamous crime nor does it involve any element of deceit or dishonesty that would reflect on credibility. Finally, appellant argues that resisting arrest is in the nature of assault and battery, and, for that reason, is not within the eligible universe of impeachable offenses. We need not decide that question, however, as, for purposes of the constitutional error issue in this case, it is sufficient that appellant contends that his counsel suggested that all of his prior convictions could be used to impeach him when not all of the convictions were for impeachable offenses.

4. In his brief, appellant suggests that the trial judge invited counsel to advise appellant on the record because he knew of appellant's limited mental abilities. The record does not reflect any such causal connection, however.

As we shall explain, we find that the trial court did not err, as the circumstances in this case did not require it to take action to advise appellant about his potential for being impeached with his prior convictions or to direct counsel to re-advise appellant about her client's risk of impeachment. We reach that conclusion assuming, but not deciding, that appellant's counsel's advice was not a legally correct admonition to appellant about his risk of being impeached with his prior convictions.

(i)

The Fifth, Sixth, and Fourteenth Amendments to the United States Constitution guarantee the accused in a criminal case the right to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 51–53, 107 S.Ct. 2704, 2708–10, 97 L.Ed.2d 37 (1987). As the right to testify is personal to the defendant, it may only be waived by him, and not by his counsel for him. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). Moreover, because the right to testify is " 'essential to due process of law in a fair adversary process,' " *see Rock v. Arkansas, supra*, 483 U.S. at 51, 107 S.Ct. at 2709, *quoting, Faretta v. California*, 422 U.S. 806, 819, n. 15, 95 S.Ct. 2525, 2533, n. 15, 45 L.Ed.2d 562 (1975), it may only be waived knowingly and intelligently, under the waiver standards established for fundamental constitutional rights in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 241, 93 S.Ct. 2041, 2055, 36 L.Ed.2d 854 (1973). For the waiver of a fundamental right to be made knowingly and intelligently, the accused must have a "sufficient awareness of the relevant circumstances and likely consequences" that forfeiting his right entails. *Brady v. U.S.*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).

The right to testify is "a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Rock v. Arkansas*, 483 U.S. at 52, 107 S.Ct. at 2709. These constitutional rights are inextricably intertwined, as a criminal defendant's decision whether to testify necessarily involves

invoking one constitutional right and waiving the other. Thus, in virtually every criminal trial, there comes a time when the defendant must choose between two reasonable alternatives, each of which requires him to waive a fundamental constitutional right:

> [These] two rights, each of Constitutional dimension, are necessarily in conflict. A defendant must choose between them. If he elects to testify, and thus subject himself to the possibility of self-incrimination through cross-examination, he gives up—waives—his equal but opposite right to refrain from compelled self-incrimination; if, on the other hand, to avoid that prospect, he elects not to testify, he obviously gives up—waives—his right to tell from his own lips his side of the story.

> Precisely because the election of one of these Constitutional rights acts as a waiver of the other, the decision to choose between them is a critical one for the defendant and must therefore reflect, at a minimum, an awareness of these correlative rights and a basic understanding of what each entails.

*Hamilton v. State,* 79 Md.App. 140, 142–43, 555 A.2d 1089, 1090 *cert. denied,* 316 Md. 550, 560 A.2d 1118 (1989).

 In the trial of a *pro se* criminal defendant, the court must advise the defendant of his constitutional rights to testify and to remain silent, so that he may make an informed choice to invoke one right and waive the other. *Williams v. State,* 110 Md.App. 1, 30, 675 A.2d 1037, 1053 (1996); *Martin v. State,* 73 Md.App. 597, 602, 535 A.2d 951, 954 (1988). When the defendant is represented by counsel, no such requirement exists. *See United States v. Teague,* 953 F.2d 1525, 1533 n. 8 (11th Cir.), *cert. denied* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992); *United States v. Martinez,* 883 F.2d 750 (9th Cir.1989), *vacated on other grounds,* 928 F.2d 1470 *cert. denied,* 501 U.S. 1249, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991). On the contrary, Maryland law recognizes a presumption, premised on the permitted inference that attorneys, as officers of the court, "do as the law and their duty require them," that

a represented defendant has been told of his constitutional rights, by his attorney. *Stevens v. State,* 232 Md. 33, 192 A.2d 73, *cert. denied,* 375 U.S. 886, 84 S.Ct. 160, 11 L.Ed.2d 115 (1963). Thus, even though the right to testify must be waived by the defendant personally, the trial court is entitled to assume that counsel has properly advised the defendant about that right and the correlative right to remain silent and, if the defendant does not testify, that he has effectively waived his right to do so.[5]

Circumstances may occur, however, that require a trial court to take measures to assure that a represented defendant has been properly advised of his rights to testify and to remain silent. We first recognized that such a duty may arise in *Hamilton v. State, supra.* There, a mentally limited defendant's words and conduct in court made it evident that he did not understand that, if he did not testify, guilt could not be inferred from his silence. The defendant testified, and was convicted of first-degree rape, kidnaping, and assault with intent to disable.

In an opinion written by Judge Wilner, we reversed, finding that the defendant's waiver of his right to remain

---

**5.** There is no provision in the Maryland Rules requiring that a defendant's waiver of his constitutional rights to testify or to remain silent be obtained in a prescribed fashion, be placed on the record, or be made in open court. *Contrast,* Md. Rule 4–242(c) (court may not accept guilty plea until it determines, "upon examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof" that, *inter alia,* the plea is made voluntarily, "with understanding of the nature of the charge and the consequences of the plea"); Md. Rule 4–246(b) (court may not accept waiver of right to jury trial "until it determines, after an examination of the defendant on the record in open court, conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that the waiver is made knowingly and voluntarily") Obviously, an unrepresented defendant's waiver of his right to testify or his right to remain silent will be made on the record, in open court, as it must be obtained by the court. A represented defendant's waiver of one of those rights might not be reflected in the record at all. Of course, the prudent practice, for purposes of direct appeal and post-conviction proceedings, is to make a record of the defendant's waiver.

silent was invalid, as it had not been knowingly and intelligent-
ly given. In so doing, we held that the presumption that a
represented defendant has been properly advised of his consti-
tutional rights to testify and to remain silent is rebuttable.
The presumption will be overcome

> if, through ... inquiry [by the court] or otherwise, it
> appears to the court that either such advice was not, in fact,
> given or that the defendant does not understand what he
> has been told ...

*Id.* at 150, 555 A.2d 1089. When that occurs, the trial court
must "take further action to assure itself that the defendant is
properly advised and does understand the nature and conse-
quences of the election he must make." *Id.*

In *Gilliam v. State,* 320 Md. 637, 579 A.2d 744 (1990), *cert.
denied,* 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991),
the defendant argued likewise that the trial court had erred in
not intervening to explain his constitutional right to testify,
even though he had been represented by counsel in his bench
trial for first-degree murder. Specifically, the defendant con-
tended that, when his counsel imparted ambiguously worded
advice, on the record, suggesting that, if he elected not to
testify, he would automatically be acquitted, the trial court
was required to take steps to inform him accurately of the
consequences of invoking his right to remain silent. The
Court described the circumstances in which a duty will arise
for the trial court to intervene to advise a represented defen-
dant about his constitutional testimonial rights:

> [O]nly where it becomes clear to the trial court that the
> defendant does not understand the significance of his elec-
> tion not to testify or the inferences to be drawn therefrom
> and where the presumption is rebutted must the court
> advise the accused of his right to testify or to remain silent.

320 Md. at 652–53, 579 A.2d 744. Holding that the trial court
had not been required to take action, as the advice that had
been given could not reasonably have been construed to imply
that the defendant would be guaranteed a not guilty verdict if
he did not testify and that, in any event, any ambiguity in the

advice did not materially affect the defendant's decision to remain silent, the Court observed:

> Where there is no indication that the defendant has a misperception of his right to remain silent and the effect of exercising that right, and where he expressly indicates he has been fully advised of and understands the right, as well as the effect of a waiver, then an ambiguous statement made by the defense counsel during an "on the record" explanation does not result in reversible error if the trial court fails to intervene and clarify counsel's ambiguous statement.

*Id.* at 656, 579 A.2d 744.

■ It is not necessary that a defendant be told of the potential for impeachment with prior convictions for his decision whether to testify to be made knowingly and intelligently. *Martin v. State,* 73 Md.App. 597, 535 A.2d 951 (1988), at 597, 535 A.2d 951 (Wilner, J.). The risk of impeachment is not a "fundamental attribute" of the right to testify, knowledge of which is essential to an understanding of the right itself. *Hamilton,* 79 Md.App. at 143, 555 A.2d 1089. Rather, it is a potential consequence of exercising the right to testify that is of largely strategic, not essential, import.

■ Nevertheless, once the trial court undertakes to inform a defendant about impeachment in advising him of his rights to testify and to remain silent, it must do so correctly. In *Morales v. State,* 325 Md. 330, 600 A.2d 851 (1992), the trial court warned an unrepresented defendant that, if he elected to testify and he had been convicted of a crime in the past, "the State may ask you about that." *Id.* at 334, 600 A.2d 851. The defendant had many prior convictions, none of which were known to the court and only one of which could have been used to impeach him. Before the trial court advised him, the defendant stated that he wished to testify. Upon hearing the court's advice, he changed his mind, and did not take the stand. The jury convicted him of possession of cocaine with intent to distribute and conspiracy to distribute cocaine. On appeal, the defendant argued that he had not knowingly

forfeited his right to testify, as he had done so in reliance upon the trial judge's legally erroneous admonition about the prospect that he would be impeached if he did testify. Observing that "[t]he decision whether or not to testify is a significant one and must be made with a basic appreciation of what the choice entails," *id.* at 335, 600 A.2d 851, the Court held that the trial court had erred in advising the defendant incorrectly and had thereby tainted the defendant's decision-making with inaccurate information, rendering his waiver unknowing and involuntary.

*Thanos v. State,* 330 Md. 77, 622 A.2d 727 (1993), like this case, presented the question whether a duty arose on the part of the trial court to intervene to correctly advise the represented defendant about the risk of impeachment with prior convictions. The defendant's counsel advised him, on the record, that, if he elected to testify, the prosecutor "could inquire into any prior convictions that [he] might have." *Id.* at 90, 622 A.2d 727. The defendant did not testify. He was convicted of first-degree murder and sentenced to death.

Several of the defendant's prior convictions were not impeachable offenses. On appeal, he argued that his counsel had stated inaccurately the effect of his invoking the right to testify; consequently, he waived his right to testify without the correct legal information necessary to make a knowing and intelligent choice. The Court took the same approach to this ineffective waiver argument that it had taken in *Gilliam,* opining that the defendant, who had announced in open court, before the start of trial, that he had no intention of ever testifying, had not been influenced by his counsel's "questionable" advice in deciding not to testify.[6]

---

**6.** In *Oken v. State,* 327 Md. 628, 612 A.2d 258 (1992), the Court similarly held that supposedly erroneous advice by the trial judge to a represented defendant to the effect that testimony that he might give in a criminal responsibility hearing could be used against him during a sentencing hearing did not influence the defendant's decision not to testify. *See also Brooks v. State,* 104 Md.App. 203, 231–32, 655 A.2d 1311, 1324–25 (1995) (ambiguous remark by trial judge did not influence defendant's decision to forego statutory right to jury sentencing).

Against that background, we examine the question whether, in the circumstances of this case, the trial court erred in not taking action, before appellant chose between testifying and remaining silent, to assure that he had an accurate understanding of his potential for being impeached with his criminal record on cross-examination.

### (ii)

 As the Court of Appeals made plain in *Thanos* and *Gilliam*, the question whether a trial court committed error in not assuring that a represented defendant was properly advised of his rights to testify and to remain silent is only brought to bear if the defendant waived one of those rights as a direct result of being misadvised by counsel. The holdings in those cases did not rest on the issue of the trial court's duty to intervene; rather, they were premised on the issue whether the advice given to the defendant by his attorney caused the defendant to decide not to testify. As the Court found that neither defendant gave up his right to testify on the basis of the legal advice that he received, it did not need to analyze closely the existence and scope of a duty on the part of the trial court to intervene.

The factors that led the Court of Appeals to conclude that the defendants in *Gilliam* and *Thanos* were not influenced by the allegedly ambiguous and erroneous advice given to them by their attorneys in deciding to waive their right to testify are not present here. Appellant did not direct and devise his defense, as was the case in *Thanos,* nor did he ascribe a meaning to his counsel's advice so ludicrous as to make plain that the advice could not have had any impact on his decision to remain silent, as did the defendant in *Gilliam.* To the contrary, the record reveals that appellant, who, like the defendant in *Hamilton,* was mentally limited, looked to his attorney for guidance and followed it. In addition, although counsel entered her appearance six months before trial and met with appellant to discuss his rights at some point before she advised him on the record, there is no evidence of in-depth and extensive attorney-client discussions, such as those that

took place in *Gilliam,* from which we might infer that appellant must have learned the very consequence of exercising his constitutional right to testify that he now claims not to have known.

While this case does not present clear-cut evidence that appellant's election to remain silent resulted directly and solely from the advice that he was given about impeachment with prior convictions, as existed in *Morales,* we cannot say that appellant's decision to waive his right to testify was not influenced by his attorney's "on the record" advice. Moreover, the record is devoid of evidence that demonstrates or from which we might infer that appellant made his decision to testify on a basis other than the advice that was imparted to him by counsel, during the trial. For that reason, and mindful that the issue raised by appellant is of a constitutional dimension, *see Williams v. State, supra,* at 34–35, 675 A.2d 1037, we turn to the question whether the trial court committed error that resulted in appellant ineffectively waiving his right to testify.

### (iii)

Appellant maintains that the holdings in *Morales* and *Hamilton* together compel the conclusion that the trial court was required to take action to correct appellant's counsel's allegedly erroneous advice, so that he would have had a true picture of the risk of impeachment that he might face if he were to testify. While we agree that, in certain well-defined and limited circumstances, the trial court must intervene to assure itself that a represented defendant understands the risk of impeachment attendant to exercising the constitutional right to testify, we do not agree that such a circumstance existed here. We explain.

The Court's reasoning in *Morales* makes plain that, from the standpoint of assessing the validity of a defendant's waiver of the constitutional right to testify, there is no logical distinction between a defendant who elects to remain silent because he has been given incorrect legal advice about the ramifications of testifying and a defendant who makes the same

election while in a state of confusion about the ramifications of testifying. Neither defendant possesses the knowledge and understanding of the constitutional right that he is in the process of deciding to exercise or to forfeit that would permit him to make an informed and intelligent choice. In one case, the requisite information is absent because incorrect information was supplied in its place. In the other, it is missing because it was never conveyed in such a way as to be understood. Only the sources of the lack of knowledge differ.

That having been said, irrespective of why a represented defendant may not have the knowledge of his right to testify so as to effectively waive that right, his lack of knowledge, in and of itself, does not translate into a duty on the part of the court to assure that the defendant understands the nature and consequences of his election. As we explained in *Hamilton,* the presumption of proper advice by counsel, which encompasses a presumption that the defendant has been informed correctly about his right to testify, will only be overcome, and a duty on the part of the trial court to take steps to make certain that the defendant is correctly advised of his rights will only arise, **if it becomes clear to the court** that the defendant does not understand the constitutional right that he is deciding to exercise or to waive. The defendant's state of mind alone does not obligate the trial court to intervene. Rather, the court must be placed on clear notice that the represented defendant does not understand his rights before such a duty will arise.

There are several reasons why this is so. First, when we recognized, in *Hamilton,* that a trial court will in some instances be required to see to it that a represented defendant understands his constitutional right to remain silent, we were advancing the principle that a court ought not knowingly allow a violation of a defendant's fundamental constitutional right. As Judge Wilner stated, when it appears to the trial court that the defendant does not understand the significance of his decision whether to testify, the court "cannot simply ignore that fact;" instead, it must act affirmatively to head off an

imminent violation. *Hamilton,* 79 Md.App. at 150, 555 A.2d 1089. If the trial court is unaware that the defendant is about to forfeit his constitutional right to testify or to remain silent without understanding the significance of doing so, however, it is not in danger of participating in or acquiescing to a constitutional violation; in that circumstance, the reason underlying the duty to intervene is not implicated.[7]

Second, any requirement on the part of the court to ascertain that a represented defendant understands his constitutional testimonial rights before it becomes apparent that the defendant does not understand those rights is in direct conflict with, and would effectively eliminate, the presumption that a represented defendant has been properly advised by counsel. A trial court could only carry out such a duty by assessing the defendant's knowledge of his rights, regardless of the surrounding circumstances; and to do that, it would have to examine the defendant and counsel about the nature of the advice imparted and the defendant's understanding of it. Hence, the court would no longer be in a position of being able to assume, unless evidence presented itself to the contrary, that the defendant had been properly advised.

Finally, as we explained in *Martin,* an assessment of a defendant's risk of being impeached with prior convictions and the factoring of that risk into the decision whether to testify is primarily a matter of trial strategy and tactics. Participation by the trial court in advising a criminal defendant of that risk may cast the court in the role of defense attorney or force it to convey the advice in terms so broad that it produces more confusion than clarity:

> [Counsel] would consider what the defendant would say if he testified, how he might hold up under cross-examination by

7. In *State v. McKenzie,* 17 Md.App. 563, 303 A.2d 406 (1973), a post-conviction case, we concluded that there had been no constitutional error even though the defendant's lawyer had never told him that he had a right to remain silent. Judge Davidson dissented, positing that the presumption of proper advice was rebutted in part because the defendant's right to remain silent is fundamental. Her position was later proven correct in *Rock v. Arkansas, supra.*

the prosecutor, and the nature and extent of any inconsistency between the expected testimony of the defendant and other evidence in the case, and develop some approximation of his overall credibility. From all of this, counsel could gauge the prospect of impeachment in a meaningful way, weigh it against the effect of leaving the State's evidence unrebutted by the defendant's testimony, and advise the defendant accordingly. The trial judge obviously cannot be expected to do all that. Absent that kind of analysis, however, a simple warning of "impeachment" will, at best, be meaningless and might well prove to be misleading or threatening. Laying out in any significant detail the range of hazards faced by a defendant who subjects himself to cross-examination by a skillful prosecutor can very easily chill a defendant's desire to tell his side of the story; too brief a summary, conversely, can lure a defendant into dreadful self-incrimination.

73 Md.App. at 603–04, 535 A.2d 951. Where the defendant is represented by counsel and it is not evident that a constitutional violation is imminent, the court should not be made to undertake an inquiry into the defendant's understanding of his risk of impeachment that might result in judicial participation in trial strategy and intrusion by the court into the relationship between attorney and client.

When is a trial court "on notice" that a defendant is deciding whether to testify or remain silent on the basis of incorrect legal advice, so as to require intervention? *Hamilton* and *Gilliam* teach that, when counsel gives ambiguous advice, words and conduct of the defendant evidencing confusion about his testimonial rights serve to place the court on notice that action must be taken to avert a constitutional violation. There is logic to this, as a defendant who does not understand what he has been told will usually exhibit outward signs of confusion, as occurred in *Hamilton,* or will indicate that he does not understand the advice that he has been given. Indeed, as the Court of Appeals made plain in *Gilliam,* a defendant who states that he understands his counsel's advice

will not be heard to complain later that he was confused and that the trial court should have intervened to correct or clarify the advice.

 Unlike a confused defendant, whose state of mind will not prevent him from communicating his lack of understanding of his rights to the court, a defendant who is operating on the basis of erroneous legal advice will not know that he does not understand his rights. Indeed, he may have a perfectly clear understanding of his counsel's advice, and indicate as much, and yet be completely misinformed and unknowledgeable. In that circumstance, it is not reasonable to expect that the defendant will communicate his lack of knowledge about his rights to the court. We hold, therefore, that, even if a represented defendant does not signal confusion or misunderstanding about his testimonial rights to the court, if it is otherwise manifest to the court that the defendant is deciding whether to testify on the basis of erroneous legal advice that will render his decision unknowing and involuntary, the court must take action to assure that the defendant is correctly advised. Such a duty will arise upon counsel imparting advice to the defendant, in the presence of the court, that is intrinsically and facially incorrect, *i.e.,* is readily identifiable as erroneous, without reference or resort to extrinsic information. At that point, the presumption of correct advice is overcome, irrespective of the defendant's outward appearance of understanding, as it is evident to the court that counsel's advice is wrong, and the court must step in, as it is also evident that the defendant cannot be electing his constitutional rights with adequate knowledge of the meaning of that choice.

 In this case, counsel's advice was not inherently, overtly, and facially erroneous. Her admonition that appellant's prior convictions could be used to impeach him was not framed as an incorrect proposition of law that could be readily identified as such by the court. Nor did counsel provide

appellant with specific advice that was incorrect on its face.[8] Although counsel's advice was specific to appellant and to his circumstance, its legal accuracy depended upon, and could not be ascertained fully without knowledge of, appellant's criminal record. To the trial judge, who did not know, and had no reason to know, the nature of appellant's prior convictions, or even if he had any convictions, counsel's advice would not have appeared to be incorrect. Given that counsel's advice was not erroneous *per se,* the presumption of proper advice remained in force, and the trial court did not err.

In ruling as we do, we note that appellant is not foreclosed from obtaining relief for the constitutional violation that he asserts. He may raise the issue in a post-conviction proceeding for ineffective assistance of counsel, in which evidence may be adduced about the advice that counsel gave to appellant, both on and off the record; appellant's criminal record; counsel's knowledge and understanding of appellant's record and the risk of impeachment that he might have faced on cross-examination; and counsel's reasons, both legal and tactical, for advising appellant as she did. *See, e.g., Rutledge v. Wainwright,* 625 F.2d 1200, 1203 (5th Cir.1980), *cert. denied,* 450 U.S. 1033, 101 S.Ct. 1746, 68 L.Ed.2d 229 (1981) (if lawyer's counseling was so patently wrong as to transgress some constitutional minimum of competent legal advice, then assistance of counsel was ineffective and plea based on that advice could not have been knowing and willing); *Horton v. State,* 306 S.C. 252, 411 S.E.2d 223 (1991) (accused received ineffective assistance of counsel when his trial counsel informed him that he could be cross-examined about prior convictions that were not for impeachable offenses). Thus, the post-conviction avenue of relief allows for a direct inquiry into whether counsel's performance in advising appellant was deficient, and, if so, whether appellant was prejudiced, *see Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

---

**8.** For example, had counsel informed appellant that his prior convictions for assault could be used to impeach him, that advice would have been facially incorrect.

(1984) and *Bowers v. State*, 320 Md. 416, 424, 578 A.2d 734, 738 (1990), rather than an oblique inquiry into whether the trial court had sufficient information to know that appellant's counsel was imparting incorrect advice about the ramifications of exercising his right to testify.[9]

### (iv)

Appellant offers three more theories why the trial court erred in not taking steps to advise him, none of which is meritorious. First, he contends that his counsel's advice was ambiguous with respect to the existence and number of prior convictions, in addition to being erroneous, and that the court should have intervened to clarify the ambiguity. Yet, appellant gave no indication that he was confused by this alleged ambiguity or that he did not understand what he was being told. As discussed above, it must be clear to the court that the defendant is confused by ambiguous advice before an obligation to intervene will arise. Here, the court had no reason to think that appellant was confused, and hence no duty to intervene.

Appellant also argues that, because he is mildly mentally retarded, the trial judge should have assumed that he did not understand what his attorney was telling him and should have intervened for that reason alone. Appellant gave no indication to the court that he was having difficulty comprehending what his attorney was relating; indeed, he acknowledged to the contrary. Moreover, four months before trial, appellant underwent a competency examination that revealed that he was able to understand the nature of the proceeding against him and assist in his defense, despite his mild mental retardation. Appellant stipulated to the accuracy of that examination and, on that basis, the trial court found him competent to stand trial. Appellant did not renew the issue of competency, nor does the record reflect that he engaged in

---

9. In a post-conviction proceeding, evidence could be taken about the reasons underlying appellant's decision not to testify, and a factual finding could be made on that issue. *See* discussion, *infra.*

behavior during trial that called his mental state into question, so as to have required the trial court to conduct a competency hearing *sua sponte. See Thanos v. State, supra,* at 81–87, 622 A.2d 727; *Hill v. State,* 35 Md.App. 98, 107, 369 A.2d 98, 103 (1977) (presumption of competency continues "until testimony and evidence presented on the record is of such character that the trial judge finds himself unable to determine beyond a reasonable doubt that the accused is able to understand the nature or the object of the proceeding against him or to assist in his defense"). The mere fact of limited intelligence or mild mental retardation in a defendant who has been adjudged competent, absent any display of behavior that calls his competency into question, does not necessitate involvement by the trial judge in advising the defendant of his rights.

Finally, appellant maintains that the trial court involved itself in advising him of his rights by asking counsel whether she wanted to advise appellant on the record and, therefore, undertook the duty to correctly inform appellant of his rights in any event. This argument is far-fetched. The trial court simply extended counsel the courtesy of placing her advice to her client on the record. That conduct cannot reasonably be interpreted to constitute substantive participation by the trial court in advising appellant of his constitutional rights to testify and to remain silent.

## II

### (i)

The lower court sentenced appellant to fifteen years imprisonment for robbery with a deadly weapon and a consecutive ten years for battery. Appellant argues that, because the battery conviction could have been for a lesser included offense of the robbery with a deadly weapon conviction, the court's failure to merge the battery conviction for sentencing purposes violated due process. The State counters that the battery conviction could not have been for a lesser included

offense of the robbery with a deadly weapon conviction, as it arose out of a wholly separate incident, and, therefore, merger was not required.

The double jeopardy clause of the Fifth Amendment protects defendants against multiple convictions and sentences for the same offense. The test for determining the identity of offenses under double jeopardy principles and Maryland merger law is the "required evidence test." *Newton v. State,* 280 Md. 260, 268, 373 A.2d 262, 266 (1977). That test, also known as the *"Blockburger* test." *see Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is as follows:

> If each offense requires proof of a fact which the other does not, the offenses are not the same and do not merge. However, if only one offense requires proof of a fact which the other one does not, the offenses are deemed the same, and separate sentences for each offense are prohibited.

*Newton,* 280 Md. at 268, 373 A.2d at 266. To apply this test, we examine the offenses involved in this case, which, for purposes of our analysis, are the common law crimes of assault, battery, and robbery.

Battery is the "unlawful application of force to the person of another." *Snowden v. State,* 321 Md. 612, 617, 583 A.2d 1056, 1059 (1991). There are two types of assault: 1) an attempted battery; and 2) a placing of a victim in reasonable apprehension of an imminent battery. *Lamb v. State,* 93 Md.App. 422, 441, 613 A.2d 402, 411, *cert. denied,* 329 Md. 110, 617 A.2d 1055, (1993). Robbery is the "felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear." *Snowden,* at 617, 583 A.2d 1056. Thus, robbery, which has been characterized by the Court of Appeals as a "multipurpose" crime, *Snowden,* at 618, 583 A.2d 1056, can be either a combination of a larceny and a battery or a combination of a larceny and an assault, of the "putting in fear" variety. *Id.*

In *Snowden*, the Court addressed the question whether the defendant's conviction for a battery that he committed at the outset of a restaurant holdup was required to be merged into his conviction for robbery. The defendant and an accomplice entered a restaurant through a back door, to steal money. The defendant encountered a store employee, and shot and killed him. Hearing the commotion, the restaurant manager ran to the back of the restaurant. The defendant confronted the store manager and shot him in the arm. Thereafter, the defendant held his gun to the manager's head and forced him to locate and hand over the restaurant's cash receipts.

The defendant was found guilty of battery and robbery of the restaurant manager.[10] On appeal, he argued that the robbery had been of the larceny-battery type, and, therefore, his battery conviction was for a lesser included offense of his robbery conviction. The State disagreed, arguing that, because the defendant had held the gun to the victim's head before taking the money, the robbery was of the larceny-assault type, and, therefore, the battery conviction was not for a lesser included offense. The case had been tried to the court; there were no instructions to elucidate the trial court's reasoning and the court did not state the basis for its verdict on the record.

The Court of Appeals held that, because the trial court could have included the battery as an element of the robbery, and there was no way to ascertain that it did not do so, due process considerations required that the ambiguity be resolved in favor of the accused, with the battery being assumed to be a lesser included offense of the robbery conviction. *Snowden*, at 619, 583 A.2d 1056. *See also, Adams v. State*, 86 Md.App. 377, 386, 586 A.2d 810, 814, *cert. denied* 323 Md. 33, 591 A.2d 249 (1991) (convictions for assault and battery merged into conviction for robbery where the only force

---

**10.** The defendant was convicted of first-degree murder of the first restaurant employee.

applied to the victim by the defendant was that essential to complete the robbery).

This case is distinguishable from *Snowden* and *Adams*. The evidence adduced at trial established that the larceny of Batson's bicycle, which was the single necessary lesser included offense of the robbery conviction, was completed before the shooting took place. The shooting was the only evidence of a battery and the taking of the bicycle was the only evidence of a larceny. Thus, the taking of the property could not have been accomplished "by violence," *i.e.*, by battery, as the violence neither coincided with nor preceded the taking. The shooting occurred after appellant had taken the bicycle and left.

Appellant argues that there was evidence presented from which the jury could have found that the shooting was perpetrated in furtherance of the robbery. He contends that, from the cross-examination of Police Detective Bruce Jones, of the Cambridge City Police Department, the jury could have concluded that, after appellant took Batson's bike, Batson found the bike in the bushes and approached appellant; and that the shooting incident that occurred shortly thereafter was part of a second taking of the bicycle by appellant.

■ Our review of the record reveals no evidence to support such a factual scenario. On cross-examination, Detective Jones testified that, when he interviewed Batson in the hospital, Batson told him that appellant took the bicycle from him at gunpoint and Batson then followed appellant to the next street and argued with him. During the argument, appellant picked up a piece of lumber. Batson hit appellant with his fist, and appellant then shot Batson with the handgun. Although this rendition of events differed in some respects from that testified to by Batson, it did not establish that Batson was in possession of the bicycle at the time of the shooting, an evidentiary fact essential to appellant's argument that the jury could have found that the taking of the bicycle was carried out "by violence," that is, by commission of the shooting/battery. The record is devoid of evidence to contra-

dict the facts establishing that the larceny was completed during Batson's initial encounter with appellant on Pine Street.[11] As such, the jury's verdict could only mean that the robbery with a deadly weapon conviction was based on the lesser included offenses of larceny and assault, and that the battery conviction was for an act separate from those constituting the robbery. There was no ambiguity in the verdict, and the court properly sentenced appellant for robbery with a deadly weapon and for battery.[12]

(ii)

 Finally, appellant contends that, under the doctrine of merger by legislative intent, otherwise known as the "Rule of Lenity," his conviction for carrying and wearing a handgun, under Md.Code Ann. (1996 Repl.Vol.), Art 27, § 36B(b),[13] should have been merged into his conviction for use of a handgun in the commission of a crime of violence (robbery),

---

11. In his brief, appellant argues that the testimony of two of his witnesses supported the factual scenario he claims the jury could have found. That is not so. One of the defense witnesses testified that, during the shooting incident, there were many people around and she saw one person riding a bike. She did not testify that Batson was the person on the bike. One of appellant's other witnesses stated that, as she was observing the altercation between Batson and appellant, she saw a person on a bicycle. It is clear from her description that the person on the bicycle was not Batson. Appellant's third witness said nothing about a bicycle. Thus, the testimony by appellant's witnesses did not demonstrate that Batson was in possession of the bicycle during the shooting incident.

12. Appellant's conviction for assault was merged into his conviction for battery. The jury was instructed that assault "is an attempt to cause physical harm" and that the State had the burden of proving "that the defendant actually tried to cause physical harm to Dwayne (sic) Batson, ... that the defendant intended to bring about physical harm, ... that the defendant's actions were not ... justified or consented to by Dwayne (sic) Batson." It appears that appellant was never charged with the "putting in fear" assault that had to have been a lesser included offense of the robbery conviction.

13. Section 36B(b) provides, in pertinent part, that "[a]ny person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person ... shall be guilty of a misdemeanor."

Art. 27, § 36B(d),[14] for sentencing purposes. In its brief, the State agrees that the court erred in failing to merge the convictions.

This issue has been addressed by the Court of Appeals in *Hunt v. State*, 312 Md. 494, 540 A.2d 1125 (1988), and again in *Wilkins v. State*, 343 Md. 444, 682 A.2d 247 (1996). In *Hunt*, the defendant put a handgun in his pocket, drove around for two hours, and then used the handgun to shoot and kill a police officer. He was convicted, *inter alia*, of use of a handgun in the commission of a crime of violence and wearing and carrying a handgun. In holding that the conviction for the latter crime should have been merged into the conviction for the former crime, the Court observed:

> We think it plain that the legislature did not intend, under circumstances like those now before us, that a separate punishment would be imposed for carrying, wearing, and transporting a handgun consecutive to that imposed for using a handgun during commission of a crime of violence.

*Hunt*, at 510, 540 A.2d 1125. In *Wilkins*, the Court applied the same reasoning to a situation in which the defendant had been sentenced to concurrent terms for use of a handgun in the commission of a crime of violence and carrying and wearing a handgun. Under *Hunt* and *Wilkins*, the separate sentence imposed by the trial court in this case for the Section 36B(b) conviction was illegal, and must be vacated.

**SENTENCE FOR WEARING, CARRYING OR TRANS-PORTING A HANDGUN VACATED. JUDGMENTS OTH-ERWISE AFFIRMED. COSTS TO BE PAID BY APPEL-LANT.**

---

**14.** Section 36B(d) provides, in pertinent part, that "[a]ny person who shall use a handgun ... in the commission of any felony or any crime of violence as defined in § 441 of this article, ... shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor ... [which sentence] shall be served consecutively and not concurrently to any sentence imposed by virtue of the commission of said felony or misdemeanor."