# IN RE APPEAL NO. 101, September Term, 1976
## from the District Court of Montgomery County, sitting as a Juvenile Court

[No. 101, September Term, 1976.]

*Decided December 1, 1976.*

The cause was argued before THOMPSON, POWERS and MELVIN, JJ.

*William J. Chen, Jr.*, for appellant.

*Leroy Handwerger, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County*, and *Tom Cooke, Assistant State's Attorney for Montgomery County*, on the brief, for appellee.

Powers, J., delivered the opinion of the Court.

In this case, here styled "In re Appeal No. 101 (76) from the District Court of Montgomery County, sitting as a Juvenile Court", Maryland Rule 1097, we are called upon by the appellant to review the proceedings against him upon a petition which represented to the court that he was a delinquent child. The petition, incorporating by reference an attached count, presented that two other named juveniles and the appellant, on 31 August 1975, unlawfully committed an assault and battery upon a boy whose name was Smith. We shall refer to the other two jointly charged juveniles as LS and WJ.

The petition was filed on 30 October 1975. All three boys appeared on 5 November before a Commissioner of the District Court in Montgomery County, for the purpose of what the Commissioner explained was not a trial, but a preliminary inquiry. He gave each boy a copy of the petition against him, and advised that, "* * * all three of you have formally been charged by the State of Maryland, through the State's Attorney's office, with having committed a certain act or certain acts that are defined under the law as a Juvenile Delinquent Act."

Each boy was told, "* * * you have a right to be represented in this matter by an attorney. If you and your parents cannot afford an attorney one will be appointed to represent you." Each answered that he understood that he had that right. LS had an attorney, who was present at the inquiry. WJ said he would like to have a public defender. Appellant initially responded that he did not know if he intended to be represented, but appellant's father told the Commissioner, "He will, yes, sir." The Commissioner

checked a block on a form where the words, "Will engage private counsel" appear.

On 5 December 1975 the adjudicatory hearing was held before a judge of the District Court. Appellant was not represented by counsel. The court adjudicated each of the three boys to be delinquent. After a disposition order was entered as to appellant on 5 January 1976, this appeal was noted.

Errors asserted are:

1. Acceptance of appellant's waiver of representation by legal counsel at the adjudicatory and disposition hearings without making the required inquiry.

2. Denial of the right of confrontation and cross examination by permitting a police officer to testify to statements made to him by the non-testifying co-respondents.

3. The legally admissible evidence was not sufficient to permit an adjudication of delinquency.

### Waiver of Right to Counsel

At the outset of the adjudicatory hearing the judge noted that respondent LS was represented by counsel. He then spoke to the others. The transcript, with names deleted, and with a correction agreed to by stipulation, reads:

"THE COURT: [WJ and his father], appearing before the commissioner you were advised of the charges, and the hearing date and you were referred to the office of the Public Defender. Now, I note that you are here without an attorney which of course, as was explained to you, is not required, but your son does have the right to an attorney. So—

[FATHER OF WJ]: He said he didn't want one.

THE COURT: Pardon me?

[FATHER OF WJ]: He said he didn't want one.

THE COURT: He decided he did not want one.

[FATHER OF WJ]: Yes, sir.

THE COURT: You understand you have the right to one, now?

[WJ]: Yes, sir.

THE COURT: You want to go ahead on the charges today without an attorney?

[WJ]: Yes, sir.

THE COURT: And how about [appellant]?

[FATHER OF APPELLANT]: The same.

[APPELLANT]: Yes, sir.

THE COURT: Advice advised.

And parents do you agree with this? Do you understand your son has the right to an attorney as I believe was discussed with the commissioner. You indicated, according to his notes, you would engage private counsel. Have you since changed your mind about this?

[FATHER OF APPELLANT]: We did consult private counsel. Although he did not say we did not need an attorney, he did not feel it was all that necessary.

THE COURT: So you're willing, as your son apparently indicates, you're willing to go ahead without a lawyer today?

[FATHER OF APPELLANT]: Exactly.

THE COURT: Thank you."

Since *In Re Gault*, 387 U. S. 1, 87 S. Ct. 1428, 18 L.Ed.2d 527 (1967), it has been clear that the Fourteenth Amendment due process clause requires the States to extend the right to counsel to juveniles during delinquency proceedings. In that case Justice Fortas said for the Supreme Court, at 36:

"A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the

facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child 'requires the guiding hand of counsel at every step in the proceedings against him.' "

The Court expressed its ruling on this phase of the case by saying, at 41:

"We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child."

Maryland's statutory recognition of that due process right is found in Code, Courts Art., § 3-821 (1976 Cum. Supp.), a part of Subtitle 8, Juvenile Causes. The section provides:

"A party is entitled to the assistance of counsel at every stage of any proceeding under this subtitle."

What a party is entitled to in our judicial system may ordinarily be waived, but the waiver must be the result of an intentional relinquishment or abandonment of a fully known right. *Johnson v. Zerbst*, 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

Procedural safeguards to assure that a waiver of representation in a juvenile proceeding is a valid waiver are set out in detail in the Maryland Rules. It must be well known to all members of the bar that these Rules are not mere guides, but must be followed. Rule 906 b. 1. provides:

"If, after the filing of a petition, a respondent, his parents, guardian or custodian, indicates a desire or inclination to waive representation, before permitting the waiver the court shall determine, after appropriate questioning in open court and on

the record, that the party fully comprehends: (i) the nature of the charges and the proceedings, the range of allowable dispositions, and that counsel may be of assistance to him in determining whether there may be defenses to the allegations of the juvenile petition, or circumstances in mitigation thereof; (ii) that the right to counsel includes the right to the prompt assignment of an attorney, without charge to the party if he is financially unable to obtain private counsel; (iii) that even if the party intends not to contest the charge or proceeding, counsel may be of substantial assistance in developing and presenting material which could effect the disposition; and (iv) that among the party's rights at any hearing are the right to call witnesses in his behalf, the right to confront and cross-examine witnesses, the right to obtain witnesses by compulsory process, and the right to require proof of any charges."

The only pertinent information developed by questioning in open court and on the record in this case was that the appellant's father understood that his son had the right to an attorney, and that he was willing to go ahead without a lawyer. The judge made no determination that the parties fully comprehended anything beyond what we have just said.

This Court, speaking through Chief Judge Orth, in an appeal from an adjudication of juvenile delinquency, *In Re Appeal No. 544, Term 1974*, 25 Md. App. 26, 332 A. 2d 680, (cert. granted, later dismissed as improvidently granted) (1975), applied by analogy the waiver of counsel provision of Maryland Rule 719, applicable in criminal cases.[1] We noted, at 39:

"The Rule implements the constitutional mandates enunciated in *Gideon v. Wainwright*, 372 U. S. 335;

---

1. It appears that Rule 906 b. 1., in effect at the time of the proceedings in the present case, was adopted after our ruling in In Re Appeal No. 544, Term 1974.

*Johnson v. Zerbst*, 304 U. S. 458, and *Carnley v. Cochran*, 369 U. S. 506. It has been consistently held that the requirements of the Rule are mandatory, and that compliance with them is required irrespective of the type of plea entered, or the lack of an affirmative showing of prejudice to the accused. *Manning v. State*, 237 Md. 349; *Taylor v. State*, 20 Md. App. 404; *State v. Diggs*, 24 Md. App. 681."

We found, on the record before us in that case, that the court should not have permitted the waiver of representation. We held that, due to lack of counsel, the waivers and admissions in that case were invalid and ineffective and the adjudicatory hearing was void.

The same force is given to Rule 719 in criminal cases. The Court of Appeals said in *State v. Renshaw*,[2] 276 Md. 259, 347 A. 2d 219 (1975), at 267-68:

"The record must show that the defendant is competent to waive the right to counsel, and that he knowingly and intelligently has done so after being made aware of the advantages and disadvantages of self-representation. * * * Where the accused cannot waive the right to counsel, or has not effectively done so, the court must take steps to insure that the accused is represented by counsel even if he professes his unwillingness to have a lawyer."

We cannot agree with the State's contention that the record in the present case shows compliance in substance. The Rule is composed of several subsections, each distinct from the other. Before the court may accept a juvenile's waiver of counsel, it must satisfy each mandate. Anything less will render the waiver void as unknowingly and

2. The Court of Appeals affirmed the judgment of this Court, Renshaw v. State, 25 Md. App. 270, 333 A. 2d 363 (1975), which reversed the conviction below, but did so for a different reason. What we treated as an ineffective attempt to waive counsel, invalidly accepted by the trial court, the Court of Appeals held was no waiver at all, but was instead a denial of the constitutional right to counsel.

unintelligently given. Compliance with the Rule does not require that the court recite the full litany in the words of the Rule. Explanation, to assure full comprehension, is more important than recital. However the result is achieved, the court must determine that the juvenile fully comprehends each of the rights and consequences delineated in the Rule. *Renshaw v. State*, 25 Md. App. 270, 274, 333 A. 2d 363 (1975).

Lack of counsel, a right not effectively waived in this case, requires reversal of the adjudication of delinquency.

## The Right of Confrontation

Appellant's contention that he was denied his constitutional right to confront and to cross examine the witnesses against him is well taken. If it was preserved for appeal, that issue alone would require reversal. There was, in the testimony of the police officer, a glaring violation of the constitutional right of confrontation and cross examination, as explained in *Bruton v. United States*, 391 U. S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968).

At the adjudicatory hearing three witnesses testified. They were the victim, Smith; a Montgomery County police officer, Steven Lansing; and the appellant. Smith testified that he and "four other guys" decided to go for a ride. The others were named as Wayne Ryler, over 18, and the three juveniles. They went in a pick-up truck, driven by Ryler, to the Patuxent River, near Ashton. Smith and the appellant rode in the back of the truck, and they were talking. The other three were in the front. Smith didn't know what they were doing.

When the group reached the river LS asked Smith if he wanted to go swimming. Smith said, "No", and LS pushed him in the water. Smith came out, and removed some of his belongings. LS told him to go in again. He did. The appellant and WJ were sitting on a ledge, some distance away. Only Ryler and LS told Smith to go in the water, or pushed him in. Then Ryler and LS told Smith they wanted him to dive into the water. They took him along a trail to a rock ledge, about 15 feet above the water, and told him to dive. Appellant was 20 or 30 feet away, out of sight. Smith dived

several times, "because [he] was asked to", and thought that if he didn't, he would be pushed. Smith testified that the appellant several times asked Ryler not to do it any more, and said, "let's go home".

After Smith dived into the water off the ledge several times, the others left. Smith rested for awhile, then walked to a nearby house. The people there called the police.

Officer Lansing testified that he investigated the complaint. He talked to Smith, and later, to the other boys. Regarding LS the officer said:

> "He stated that he was involved in the incident, that it was preplanned by all of them to take Mr. Smith out there, * * *. He did push him, he admitted pushing him in off the lower rocks (indiscernible) water and then he further stated that he was also involved in physically picking up Mr. Smith along with Mr. Ryler and throwing him off of the upper ledge.
>
> Q (By the State's Attorney) Now when he indicated to you that there had been a plan beforehand, did he indicate who had been parties to that plan?
>
> A He just said all of them.
>
> Q And you took that to mean what?
>
> A All four of the subjects."

The officer testified that he talked to WJ, who told him, "* * * that he disliked Mr. Smith and they planned to do this to teach him a lesson."

Later, speaking of his questioning of LS the officer said, "My question was, I asked him if it was planned and he said yes."

Both LS and WJ chose to remain silent. Neither offered any evidence. Appellant testified. He said he knew nothing of any planning and pointed out that he and Smith rode in the back of the truck, while the other three were in the cab. He said he realized what was happening only after Smith had been pushed in the first time. Later, both he and WJ

protested, but Ryler gave them the choice of going
swimming or being quiet. When Ryler said he'd like to see
Smith dive in ten times, WJ and appellant tried to get them
to decrease it to five. It is not clear what success they had,
except for Smith's own statement that he dived several
times.

In announcing the adjudication of delinquency as to all
three of the juveniles, the court said:

> "So the Court will find as to [LS], there was an
> assault and find him delinquent. As to [WJ] the
> Court will make a similar finding. With the State
> pointing out this was a preplanned thing. This
> wasn't something that just came up [.] [A]s to
> [appellant], although possibly less involved, the
> Court is forced to find that he also participated in
> assault and find him delinquent as well. I think
> that there was a point that he and possibly, maybe
> to some lesser extent, [WJ], would have liked to
> have forgotten the whole thing and called it off and
> I can understand that maybe if Ryler and possibly
> [LS], but in any event Ryler was a threat, and I can
> understand why they didn't intercede. I don't think
> there's any requirement in the law that you have to
> put your own life in jeopardy to protect another.
> Although it may be commendable, it's still not a
> requirement. I would think the point is that it
> shouldn't have started in the first place and I think
> all the boys participated in the event at the
> beginning and it's something they should never
> have taken part in."

In the case entitled *In Re Appeal No. 977*, 22 Md. App. 511,
323 A. 2d 663 (1974), we said, at 516:

> "In the present case, of course, we are dealing
> with a juvenile delinquency adjudicatory hearing,
> and not a criminal trial. *In re Gault*, 387 U. S. 1, 87
> S. Ct. 1428, 18 L.Ed.2d 527 (1967), however, is
> completely dispositive. In applying various
> constitutional protections to the 'quasi-criminal'

proceedings in the adjudication of delinquency, the Supreme Court specifically included:

1. Notice of charges;
2. Right to counsel;
3. Right to confrontation and cross-examination; and
4. The privilege against compulsory self-incrimination.

On cross-examination, the Court was very explicit, at 387 U. S. 57:

'We now hold that, absent a valid confession, a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross-examination in accordance with our law and constitutional requirements.'

The applicability to juvenile delinquency adjudicatory hearings of the Sixth Amendment confrontation clause generally and the *Bruton* doctrine specifically cannot be doubted. We hold that they do apply.

"It is, furthermore, clear in the instant case that none of the recognized exceptions to the *Bruton* doctrine bar its utilization here."

Appellant vigorously argues the *Bruton* error — the State answers that there was no objection to the officer's testimony relating the statements of the non-testifying co-respondents, the issue was not tried and decided below, and was not preserved for appeal. The State argues alternatively that the statements were neutral — that they did not explicitly inculpate appellant as a participant in the plan — that it was only the officer's interpretation that the planning was by all four. Finally, the State contends that if there was error in admitting the evidence, the error was harmless beyond a reasonable doubt.

It is true that there was no objection to the testimony, and the issue was not tried and decided below. We shall not decide the issue here. It is sufficient to point to the evidence which would have been excluded upon objection, to illustrate the devastating effect of the lack of counsel.

### Sufficiency of the Evidence

The test of the sufficiency of the evidence to be applied in any delinquency adjudication is whether the evidence, adduced either directly or by rational inference, enabled the trier of fact to be convinced beyond a reasonable doubt that the juvenile was a delinquent child. *In Re Appeal No. 504, Term 1974,* 24 Md. App. 715, 723, 332 A. 2d 698 (1975).

We said in *In Re Appeal No. 544, Term 1974, supra,* at 40:

> "To prove that appellant was a delinquent child, the State's Attorney had to adduce evidence which proved beyond a reasonable doubt (1) that an act had been committed which would be a crime if committed by a person who is not a child, that is the *corpus delicti*; (2) that appellant committed it, that is his criminal agency; and (3) that appellant required supervision, treatment or rehabilitation."

With respect to the test of sufficiency of the evidence, we said in *In Re Appeal No. 504, Term 1974, supra,* at 723:

> "In ascertaining whether this test was met we must do so within the strictures of Rule 1086 because the action was tried below without a jury. We may not set aside the judgment of the juvenile judge on the evidence unless he was clearly wrong, and in considering whether he was, the Rule requires that we give due regard to his opportunity to judge the credibility of the witnesses."

The "witnesses" whose "testimony" was the sole basis for the judge's finding, at least as to the appellant, that the assault upon Smith was preplanned,[3] were not in fact

---

3. Curiously enough, the probation officer who made the pre-disposition investigation for the court placed blame upon the appellant, not for what he did, but for what he failed to do. She testified: "Based on the information

witnesses, and did not testify, and the court had no opportunity to judge their credibility. It seems quite clear to us from the comments of the judge in announcing his findings of delinquency, that as to LS the evidence showed a direct and active assault and battery, and that as to WJ and the appellant, the adjudication was made because the judge found that "this was a preplanned thing".

Because the evidence of the police officer was, at best, uncertain whether the appellant participated in the preplanning; because appellant was with Smith, and both were separated from the other three during the ride to the river; and because we cannot ignore the fact that in a fair and just hearing, with counsel, the officer's testimony would not have been admitted against the appellant, we hold that as to the appellant that finding was clearly erroneous. The credible evidence was not sufficient to enable the trier of the facts to be convinced beyond a reasonable doubt of the appellant's criminal agency.

*Judgment reversed.*

*Costs to be paid by Montgomery County.*

---

I've received, he was more or less a passive participator in that he was present when the event occurred, but he did not plan the event, as the others involved did. However, he did not make any active effort to my way of thinking to intercede on his friend's behalf."