740 A.2d 69

**In re CHRISTOPHER T.**

**No. 06733, Sept. Term. 1998.**

Court of Special Appeals of Maryland.

Nov. 2, 1999.

Peter F. Rose, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ann Ince, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and HOLLANDER and THIEME, JJ.

HOLLANDER, Judge.

In this case, we must determine whether the juvenile court erred by requiring Christopher T., appellant, to proceed to trial without an attorney. Nine-year old Christopher was charged in a delinquency petition with burglary and related offenses. Following an adjudicatory hearing, the Circuit Court for Charles County, sitting as a juvenile court, found Christopher "involved" in conduct equivalent to first and fourth degree burglary, theft of property valued at more than $300.00, and willful and malicious destruction of property valued at less than $300.00. The court subsequently ordered appellant to pay $1,670.00 in restitution and placed him on supervised probation. On appeal, Christopher presents the following issues for our review, which we have rephrased slightly:

1. Did the juvenile court err in requiring Christopher to begin the adjudicatory hearing without the benefit of legal representation?

2. Did the juvenile court err in finding Christopher had the ability to pay $1,670 in restitution?

3. Did the juvenile court err in the way that it determined the amount of restitution?

For the reasons discussed below, we answer question 1 in the affirmative. Therefore, we shall vacate the delinquency finding and remand for further proceedings. In view of our disposition, we decline to address the remaining contentions.

## Factual Summary[1]

Thomas Headley[2] and his family left their townhouse on Thursday, July 9, 1998. When they returned on Saturday, July 11, 1998, they discovered that their home had been ransacked. The back door was open, the faucets had been left running, food was strewn about, soda had been spilled on the carpets and sofas, and dirty tissues with feces were found on a child's bed. Entry was gained through a basement window, and broken glass littered the finished basement. Several personal items were missing, including a child's bicycle, a cordless phone, and collectible dolls. Headley estimated the value of the stolen or damaged property at about $1,835.00.[3]

Officer David Beall responded to the scene. Based on information provided to the police by Headley's son, appellant became a suspect. At the time, Christopher was in a nearby parking lot. When the officer spoke to Christopher, he admitted that shortly after the Headley family left on July 9th, he entered their home with two other juveniles. He also told the officer that, on July 10, he entered the home a second time with two other people. Christopher informed the officer that some of the stolen property was at his house and that he and another juvenile had spray-painted the bike. The officer drove Christopher to his residence to retrieve the property; the bicycle and several dolls were recovered there.

Later that night, Christopher's mother brought him to the police station. After appellant's mother instructed her son to tell the officer the "truth" about what happened, appellant made additional incriminating statements.[4]

---

1. Given our resolution of the first question, our factual summary primarily focuses only on the facts relevant to that issue.

2. The witness's name is spelled as "Hedley" in the transcript. But, in appellant's brief and in a letter authored by the witness, the name is spelled as "Headley." We shall use the spelling that the witness used.

3. Headley originally estimated the value of the property was $1,836.00. He altered that estimate by one dollar when he testified at the February 10, 1999 disposition and restitution hearing.

4. The court did not suppress the statements that appellant made in response to his mother's directive. But, the court suppressed the

Appellant appeared with his mother in juvenile court on October 2, 1998, for an initial appearance. Ms. T. acknowledged receipt of the juvenile petition that alleged that Christopher "committed some offenses that would be criminal offenses if he were over the age of 18." She was also informed by the court that her "son [was] entitled to be represented by a lawyer...." Ms. T. indicated, however, that she did not want a referral to the Public Defender's Office. A trial date was then set for November 4, 1998.

On November 4, 1998, appellant appeared without an attorney for the adjudicatory hearing. His mother was present. At that time, upon inquiry by the court, Ms. T. advised that she did not want to proceed without an attorney for her son. She explained that she had failed to obtain counsel earlier because she did not realize the gravity of the situation. Rather than "inconvenience" the victim, who was present for trial, the court decided to commence the proceeding. The court said: "Mr. He[a]dley is going to testify, and then we will talk about giving you a continuance." After Headley testified, the court "referred" Ms. T. to the Public Defender's Office and continued the case until November 20, 1998.

On November 20, 1998, when Christopher T. returned for trial, his attorney promptly moved for a mistrial because of Christopher's lack of legal representation at the outset of the adjudicatory hearing on November 4, 1998. The court believed that it had made a finding of waiver by inaction on November 4, 1998, because Christopher appeared without an attorney, notwithstanding that the court had previously advised Ms. T. of Christopher's right to counsel, and his mother lacked "any good reason" for failing to obtain counsel. On that basis, the court explained that it had declined to "inconvenience" the State's witness. Nevertheless, the court decided to continue the hearing to enable defense counsel to obtain the transcript of the November 4, 1998 proceeding.

---

statements made by appellant in response to follow-up questions posed by the police, because Christopher had not received *Miranda* warnings.

The adjudicatory hearing resumed on January 8, 1999. At that time, appellant's counsel renewed her motion for mistrial, arguing that appellant was denied his constitutional right to counsel at the November 4, 1998 proceeding, and had been "irreparably prejudiced" by the lack of an attorney. Explaining that appellant and his mother "had chosen not to avail themselves of [the court's] advising them of their rights and referring them to the Public Defender," the court denied the motion. The court also reiterated its concern about the inconvenience to the State's witness, and noted that appellant had not been "irreparably prejudiced" by what had occurred.

We will include additional facts in our discussion.

## Discussion

Appellant asserts that the court violated his right to counsel under federal and State constitutional law, and under Maryland Rule 11–106(b), because he was forced to begin the adjudicatory hearing without a lawyer. The State concedes that appellant had a right to counsel, stating: "Undeniably Christopher T. was entitled to assistance of counsel at every stage of his juvenile proceeding." It also acknowledges that the court did not strictly comply with Md. Rule 11–106(b). Nevertheless, the State insists that reversal is not required because appellant was not prejudiced by the error, and any error was harmless beyond a reasonable doubt. We disagree with the State's position.

The right to counsel in a State criminal case derives from Article 21 of the Maryland Declaration of Rights, the Sixth Amendment of the United States Constitution, and the Due Process Clause of the Fourteenth Amendment. In *State v. Wischhusen*, 342 Md. 530, 677 A.2d 595 (1996), the Court of Appeals explained the importance of counsel in a criminal case:

> The defendant's right to the assistance of counsel is of paramount importance in a criminal trial. The assistance of counsel protects the defendant's right to a fair trial by "requir[ing] the prosecution's case to survive the crucible of meaningful adversarial testing." In addition to safeguard-

ing the defendant's due process rights, defense counsel also serves an overarching purpose as protector of the defendant's other constitutional rights.

*Id.* at 537, 677 A.2d 595 (internal citations omitted).

The fundamental right to counsel unquestionably extends to juveniles in delinquency cases. Over thirty years ago, in *In re Gault,* 387 U.S. 1, 36, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Supreme Court recognized that "[a] proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution." *Id.* at 36, 87 S.Ct. 1428. Thus, the Supreme Court concluded: "[T]he Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency ... the child and his parents must be notified of the child's right to be represented by counsel...." *Id.* at 41, 87 S.Ct. 1428. Accordingly, a juvenile's right to counsel in a delinquency proceeding is commensurate with the right to counsel in a criminal case. *See In re Appeal No. 101,* 34 Md.App. 1, 4, 366 A.2d 392 (1976) (stating that the Constitution "requires the States to extend the right to counsel to juveniles during delinquency proceedings."); *see also Parren v. State,* 309 Md. 260, 277, 523 A.2d 597 (1987) ("The legislature created the Office of Public Defender 'to provide for the realization of the constitutional guarantees of counsel in the representation of indigents ... in criminal and *juvenile* proceedings ....'") (emphasis added); *In re Devon T.,* 85 Md.App. 674, 684, 584 A.2d 1287 (1991) (stating that "a juvenile charged with delinquency [is guaranteed] most of the due process protections afforded an adult charged with crime."); *see, e.g., Carroll v. State,* 19 Md.App. 179, 185–87, 310 A.2d 161 (1973).

Maryland Code (1973, 1998 Repl.Vol.), Cts. & Jud. Proc. Art., Subtitle 8, is entitled "Juvenile Causes." Section 3–821(a) constitutes "statutory recognition of th[e] due process right" identified by the Supreme Court in *Gault. In re Appeal No. 101,* 34 Md.App. at 5, 366 A.2d 392. Section 3–821(a) states: "Except as provided in subsections (b) and (c)

... a party is entitled to the assistance of counsel at every stage of any proceeding under this subtitle."

Maryland Rule 11–106(b) governs waiver of counsel in juvenile causes. It delineates a strict waiver procedure. The rule provides, in part:

### Rule 11–106. Right to counsel.

a. *In All Proceedings—Appearance of Out-Of-State attorney.* The respondent is entitled to be represented in all proceedings under this Title by counsel retained by him, his parent, or appointed pursuant to the provisions of subsection b 2 and 3 of this Rule....

b. *Waiver of Representation-Indigent Cases–Non–indigent Cases.* 1. Waiver procedure. If, after the filing of a juvenile petition, a respondent or his parent indicates a desire or inclination to waive representation for himself, before permitting the waiver the court shall determine, after appropriate questioning in open court and on the record, that the party fully comprehends:

(i) the nature of the allegations and the proceedings, and the range of allowable dispositions;

(ii) that counsel may be of assistance in determining and presenting any defenses to the allegations of the juvenile petition, or other mitigating circumstances;

(iii) that the right to counsel in a delinquency case ... includes the right to the prompt assignment of an attorney, without charge to the party if he is financially unable to obtain private counsel;

(iv) that even if the party intends not to contest the charge or proceeding, counsel may be of substantial assistance in developing and presenting material which could affect the disposition; and

(v) that among the party's rights at any hearing are the right to call witnesses in his behalf, the right to confront and cross-examine witnesses, the right to obtain witnesses by compulsory process, and the right to require proof of any charges.

■ In order to safeguard a juvenile's right to counsel, it follows that the standard for waiver of counsel in a delinquency proceeding is necessarily as strict as the waiver standard that attaches in a criminal case. Indeed, in *In re Appeal No. 544*, 25 Md.App. 26, 40, 332 A.2d 680 (1975), we reasoned that "[t]o have a less strict standard for an effective waiver of counsel by a child than by an adult would be completely incongruous."

With these principles in mind, we first examine the record below to ascertain whether the court complied with Md. Rule 11–106(b). In order to find a valid waiver of counsel by appellant, the record must demonstrate that the court satisfied the rule's directives. We begin with a review of the court's advisement on October 2, 1998, when appellant and his mother first appeared in court.

THE COURT: Okay. You are Mrs. Deborah T[.], is that right[?]

MS. T[.]: Yes, sir.

THE COURT: And Mrs. T[.], this is your son Christopher, and his birth date it says here is the 5 th day of January, 19 hundred and 89.

MS. T[.]: That is correct.

THE COURT: It says here you live at Petree Court in Bryans Road. Is that a Charles County address?

MS. T[.]: Yes, sir.

THE COURT: Mrs. T[.], did you receive from the Sheriff a copy of a juvenile petition alleging that your son, Christopher, on or about the 9th of July, 1998 here in Charles County committed some offenses that would be criminal offenses if he were over the age of 18?

MS. T[.]: Yes, sir.

THE COURT: Okay. And we are going to schedule this matter for a trial in court to determine whether he was involved in the commission of those offenses. If he was he can be found to be a delinquent child. That trial is going to be held on the 4th day of November. Your son is entitled to be represented by a lawyer when he comes to that trial. If

you can't afford to employ an attorney for him or don't want to hire a lawyer for him I will refer you to the Public Defender and if he qualifies for their services they will appoint a lawyer to represent him. Do you want me to refer him to the Public Defender?

MS. T[.]: No.

THE COURT: Okay. Madam Clerk I want your docket entry to reflect that Mrs. T[.] and her son appeared, that she doesn't want to be referred to the Public Defender, case is scheduled for hearing on the 4th of November at 9:30.

We will give you notice of that hearing date, Mrs. T[.]. You should give that as well as the paper you got from the Sheriff to the lawyer you hire to represent your son. Have him back here at 9:30 on the 4th of November.

Thank you Ma'am.

Christopher and his mother returned to court on November 4, 1998, for the adjudicatory hearing. On that day, neither appellant nor his mother specifically expressed a desire to waive counsel. The following colloquy is relevant:

THE COURT: When you were in court, Ms. T[.], with your son, on the 2nd of October, you refused my offer to refer him to the Public Defender. Did you hire a lawyer for your son?

MS. T[.]: No, I didn't, Your Honor.

THE COURT: Are you ready to proceed today without an attorney?

MS. T[.]: I don't know.

THE COURT: Two answers—yes or no.

MS. T[.]: Yes. No.

\* \* \*

THE COURT: Ms. T[.], when you were here before I asked you whether you wanted to proceed in this case without a lawyer representing Christopher, and you didn't respond to that. Have you thought about that?

MS. T[.]: Yes.

THE COURT: What is your response to that?

MS. T[.]: *I am not going to proceed without a lawyer.*

THE COURT: *How come you haven't gotten him a lawyer?*

MS. T[.]: *Because of the events, I wasn't aware*—okay. I knew my son didn't do it, is the basic thing, *so I didn't see why he did need an attorney,* but I just saw this letter, and I am hearing all of this other stuff, and I am going, wait a second, there is no way I am just going to go, like, he is guilty of something that he is not guilty of. I just can't do it and what do I know about the court.

THE COURT: What do you want?

MS. T[.]: I just don't know anything about this sort of thing, so I just figured I would just go and say he was not guilty and that would be done with it and I would just tell them what happened and stuff. Like I say, I just saw this letter that says we have done this and we have done that, and I know we have not participated in any sort of thing like that, so, you know, I am just—*no, I don't want to proceed. I do want to see an attorney.*

THE COURT: You did the last time, too.

MS. T[.]: Right, but I didn't know that—see, I wanted to go talk to the man when this thing happened, and I was informed, by the police, not to go talk to the guy, let them know my son was not involved, and he didn't go into this person's house and commit any of these things. Now, I am finding out the other little fellow that was involved with it and more than likely helped the other guy do a lot of this stuff, isn't anywhere mentioned in this especially in this horrible letter, so it is not like, nobody told me too much of anything, so I figured, okay, I will come to court, we will tell them you are not guilty because you are not guilty. Okay. And that would be it, but it appears to be more complicated, now.

THE COURT: That is a rather naive attitude. O.J. Simpson said, I am not guilty, but they had a trial that has

lasted two months. So you don't come into court and say you are not guilty and I will take your word for it.

MS. T[.]: It is not a matter of taking my word.

THE COURT: How many witnesses do you have here, Madam State?

[THE PROSECUTOR]: Two witnesses.

THE COURT: Who do you have here?

[THE PROSECUTOR]: I have the case officer in this report, as well as Mr. He[a]dley, the victim in this case.

THE COURT: Okay. *I will have Mr. He[a]dley testify, so he doesn't have to come back.* Ms. T[.], you can have a seat there with your son and *Mr. He[a]dley is going* to testify, and then we will talk about giving you a continuance. *I am not going to inconvenience this man because you didn't do what you are supposed to do.*

(Emphasis added).

After the State questioned Headley, Ms. T. attempted to cross-examine him. At the conclusion of Headley's testimony, the court said to appellant's mother: "Now, when are you going to hire your son a lawyer, Ms. T[.]?" Ms. T. responded: "I will go to the Public Defender today." The court then continued the matter to November 20, 1998.

When appellant appeared with counsel on November 20, 1998, his lawyer moved for a mistrial. Although that motion was denied, the court granted a continuance in order to enable Christopher's attorney to obtain a transcript of the victim's testimony on November 4, 1998. In denying the motion for mistrial, it is apparent that the court labored under the belief that it had fully advised appellant and his mother of appellant's right to counsel. The court said:

[Defense Counsel], I can advise people of their rights and I know that in this case I personally advised your client and his mother of their right and she declined representation by the Public Defender and then she appeared in court without an attorney and the State had its witnesses here. She didn't have any good reason for not getting a lawyer or for

not asking to be referred to the Public Defender before that time and we went forward. And I made a finding of waiver by inaction at that point. And I took the State's case so I wouldn't inconvenience their witnesses and I don't intend to inconvenience them by having them come back some other time.

If you want to have a further continuance to obtain a transcript of this proceeding I will be more than happy to give you that and then after you review that you can present your defense and I will be happy to handle it that way but I am not going to give you a mistrial.

■ It is apparent from the record that neither appellant nor his mother expressly waived the right to counsel. To the contrary, appellant said nothing, and Ms. T. made it clear that, once she understood the seriousness of her son's predicament, she realized that he needed a lawyer. Moreover, even if a waiver could be based on a finding that Ms. T. was dilatory, Rule 11–106(b) does not specifically provide for waiver by inaction. This is in contrast to Rule 4–215, which governs waiver of counsel in criminal cases; Rule 4–215(d) expressly permits the court to find waiver by inaction in the circuit court.

■ Even if appellant had expressly waived his right to counsel, or did so by inaction, such a waiver would have been ineffective, because the record plainly demonstrates that the court failed to provide the information mandated by Md. Rule 11–106(b)(i), (ii), (iv), and (v). Specifically, the record is devoid of any indication that appellant was advised of the following: the nature of the allegations and the range of allowable dispositions, as required by Rule 11–106(b)(i); that counsel might be of assistance in presenting defenses to the charges or in presenting mitigating circumstances, as required by Rule 11–106(b)(ii); that, even if appellant did not dispute the charges, a lawyer could help by presenting information to the court relevant to disposition, as mandated by Rule 11–106(b)(iv); that appellant had the right to call witnesses, cross-

examine witnesses, obtain witnesses by subpoena, and demand proof of the allegations, as directed by Rule 11–106(b)(v).

The record reveals that the court was mistaken when it suggested on November 20, 1998, that appellant had been previously apprised of his right to counsel. Moreover, although the court believed that it had made a finding of waiver by inaction, no such finding was made. In any event, as we noted earlier, Md. Rule 11–106 does not provide by its terms for waiver by inaction. Additionally, because the court failed to advise appellant adequately of the right to counsel, we are of the view that the court erred when it concluded that Ms. T. did not provide a meritorious explanation on November 4, 1998, for failing to obtain counsel for her son. Considering how little Ms. T. had been told on October 2, 1998, it is understandable that she would not immediately have realized or appreciated the gravity of the charges lodged against her son.

The State maintains that, because Ms. T. received the delinquency petition, which contained the advisements mandated by Rule 11–106(b), the court below complied, in effect, with that rule by ascertaining that appellant and his mother had received the petition. Having responded to the summons, the State suggests that Ms. T. and appellant would have understood the nature of the allegations and the possible dispositions, as well as Christopher's other rights. The State argues:

> The petition which Christopher T.'s mother acknowledged receiving, and the summons to which she responded, detailed the range of possible dispositions in his case, including, *inter alia*, detention, commitment, custody, treatment and supervision, as well as restitution not to exceed $10,000, informed Christopher T. and his mother of his right to retain counsel and the means for obtaining representation, and advised Christopher T. of the right to request witnesses in his behalf and described the method required for securing the attendance of desired witnesses.

By confirming that Mrs. T. and Christopher T. had received the information contained in the petition . . . the juvenile court ascertained that Christopher T. comprehended the rights set forth in Rule 11–106.b.1.

■ The State's arguments are legally and factually unavailing. As a matter of law, we conclude that strict compliance with Rule 11–106(b) is essential to uphold a waiver of counsel in a delinquency proceeding. Factually, we agree with appellant that it "strains credulity" to suggest that Ms. T. "indicated" she "understood" her son's rights merely because she acknowledged receipt of the petition.

In reaching our conclusion that Rule 11–106(b) commands strict compliance, the case of *In re Appeal No. 101,* 34 Md.App. 1, 366 A.2d 392 (1976), is instructive. There, the Court analyzed former Rule 906b.1, from which Rule 11–106(b) is derived. The appellant, a juvenile, appeared with his father before a court commissioner for a "preliminary inquiry" and received a copy of the petition. *Id.* at 2, 366 A.2d 392. He was also told of his "right to be represented . . . by an attorney," and that, if he could not afford a lawyer, one would be appointed for him. *Id.* The appellant's father indicated to the commissioner that he intended to engage counsel.

One month later, the appellant and a co-respondent known as WJ appeared before the lower court for an adjudicatory hearing. Appellant's father was present, but he had not retained a lawyer for his son. As the advisement is critical to an understanding of the case, we restate it below:

"THE COURT: [WJ and his father], appearing before the commissioner you were advised of the charges, and the hearing date and you were referred to the office of the Public Defender. Now, I note that you are here without an attorney which of course, as was explained to you, is not required, but your son does have the right to an attorney. So -

[FATHER OF WJ]: He said he didn't want one.

THE COURT: Pardon me?

[FATHER OF WJ]: He said he didn't want one.

THE COURT: He decided he did not want one.

[FATHER OF WJ]: Yes, sir.

THE COURT: You understand you have the right to one, now?

[WJ]: Yes, sir.

THE COURT: You want to go ahead on the charges today without an attorney?

[WJ]: Yes, sir.

THE COURT: And how about [appellant]?

[FATHER OF APPELLANT]: The same.

[APPELLANT]: Yes, sir.

THE COURT: Advice advised.

And parents do you agree with this? Do you understand your son has the right to an attorney as I believe was discussed with the commissioner. You indicated, according to his notes, you would engage private counsel. Have you since changed your mind about this?

[FATHER OF APPELLANT]: We did consult private counsel. Although he did not say we did not need an attorney, he did not feel it was all that necessary.

THE COURT: So you're willing, as your son apparently indicates, you're willing to go ahead without a lawyer today?

[FATHER OF APPELLANT]: Exactly.

THE COURT: Thank you."

34 Md.App. at 3–4, 366 A.2d 392.

Referring to former Rule 906b.1, the Court in *In re Appeal No. 101* observed that the Maryland Rules "are not mere guides, but must be followed." *Id.* at 5, 366 A.2d 392. The Court noted that the "only pertinent information developed by questioning in open court . . . was that the appellant's father understood that his son had the right to an attorney, and that he was willing to go ahead without a lawyer." *Id.* at 6, 366 A.2d 392. But, we pointed out that the lower court failed to make any "determination that the parties fully comprehended anything. . . ." *Id.* Of particular significance here, we specifically rejected the State's contention that substantial compli-

ance with Rule 906b was adequate to uphold a juvenile's express waiver of counsel. The Court said:

> Before the court may accept a juvenile's waiver of counsel, it must satisfy each mandate [of the Rule]. Anything less will render the waiver void as unknowingly and unintelligently given.... However the result is achieved, the court must determine that the juvenile fully comprehends each of the rights and consequences delineated in the Rule.

*Id.* at 7–8, 366 A.2d 392. Accordingly, notwithstanding that both the juvenile and his father expressed the desire to proceed without counsel, we reversed the finding of delinquency because of the defective waiver.

In the case *sub judice,* the waiver was equally deficient. Worse yet, unlike the above case, neither appellant nor his mother ever expressly indicated a desire to proceed without an attorney. To the contrary, although Ms. T. initially said she did not want a referral to the Public Defender, she did not state that she was willing to waive counsel. And, when Ms. T. appeared on November 4, 1998, she articulated the desire for an attorney for her son.

As both Rule 4–215 and Rule 11–106 protect and implement the same constitutional right to counsel, we believe that a review of the Court of Appeals's construction of Rule 4–215 is also helpful here. To be sure, we recognize that the rules of procedure applicable to criminal cases do not apply to juvenile proceedings. *In re Victor B.,* 336 Md. 85, 96, 646 A.2d 1012 (1994). Nevertheless, as Judge Moylan has said for this Court, there has been a "slow but inexorable transformation of the juvenile court apparatus into one with increasingly penal overtones." *In re Devon T.,* 85 Md.App. at 684, 584 A.2d 1287. Moreover, in both *In re Appeal No. 101,* 34 Md.App. at 6–8, 366 A.2d 392 and *In re Appeal No. 544,* 25 Md.App. at 38–40, 332 A.2d 680, this Court analogized to the criminal rule then governing waiver of counsel in order to construe a comparable juvenile rule. Specifically, we looked to former Rule 719, the predecessor to Rule 4–215, in deciding that the

juvenile court must strictly comply with the juvenile waiver of counsel rule.

In *In re Appeal No. 544,* the Court acknowledged that "a juvenile adjudicatory hearing is not technically a criminal case...." 25 Md.App. at 39, 332 A.2d 680. Because a delinquency proceeding is "endowed with many of the incidents of a criminal trial," *id.,* we relied on former Rule 719 to require a strict construction of the waiver of counsel rule in the juvenile context, stating: "Although Rule 719 is applicable only to criminal cases ... we believe no less is required for a knowing and intelligent waiver of counsel in a delinquency proceeding involving children than is required in a criminal proceeding, ordinarily involving adults." *Id.* at 39–40, 332 A.2d 680.

When we consider the Court's strict application of Rule 4–215, we are convinced that reversal is required here due to the lower court's failure to adhere precisely to the terms of Rule 11–106. We explain.

The Court of Appeals has repeatedly rejected the view that substantial compliance with Md. Rule 4–215 is sufficient to uphold a finding of waiver under that rule. In the recent case of *Johnson v. State,* 355 Md. 420, 735 A.2d 1003 (1999), the Court of Appeals considered whether a circuit judge, vested with exclusive original jurisdiction, properly found a waiver of counsel based on information initially provided to the defendant by a court commissioner and later by a District Court judge. Among other things, the defendant had received a "Notice of Advice of Right to Counsel," which included the requisite advisements. *Johnson,* 355 Md. at 426, 735 A.2d 1003. Because the circuit court did not strictly comply with the specific procedure set forth in Md. Rule 4–215, the Court concluded that the lower court erred in finding a waiver of counsel by inaction. It said: "[W]e hold that substantial compliance with Md. Rule 4–215(a)(1)–(5) is not sufficient for there to be an effective Md. Rule 4–215(d) waiver of counsel by a defendant." *Id.* at 426, 735 A.2d 1003.

The *Johnson* Court made clear that Md. Rule 4–215 establishes "a bright line rule that requires strict compliance" in order to find waiver. *Id.* at 452, 735 A.2d 1003. It stated:

This Court has on several occasions resisted attempts to relax the strictures of Md. Rule 4–215. We believe that any erosion of the rule's requirements would begin the dangerously slippery slope towards more exceptions. The right to assistance of counsel in criminal proceedings is a fundamental right; therefore, we indulge every reasonable presumption against waiver-whether such waiver is expressly made by the defendant or implied through his or her refusal or failure to obtain counsel. Maryland Rule 4–215 exists as a safeguard to the constitutional right to counsel, providing a precise "checklist" that a judge must complete before a defendant's waiver can be considered valid; as such, it mandates strict compliance.

*Id.* at 426, 735 A.2d 1003.

Recognizing the importance of Md. Rule 4–215 "in protecting a defendant's fundamental constitutional right to counsel," *Id.* at 447, 735 A.2d 1003, the Court specifically reaffirmed its holdings in *Parren v. State,* 309 Md. 260, 523 A.2d 597 (1987); *Moten v. State,* 339 Md. 407, 663 A.2d 593 (1995); *Okon v. State,* 346 Md. 249, 696 A.2d 441 (1997). The Court also reiterated that Md. Rule 4–215 is a " 'precise rubric,' " demanding strict compliance in order for there to be an effective waiver of counsel by a criminal defendant. *Johnson,* 355 Md. at 446, 451, 735 A.2d 1003. Further, in determining that Md. Rule 4–215 is mandatory and that substantial compliance is not sufficient, the Court pointed to the use of the word "shall" in the rule. *Id.* at 452, 735 A.2d 1003. Relying on the "plain language" of the rule and prior case law, the Court said there was "no doubt" that strict adherence to the rule is a prerequisite to a valid finding of waiver. *Id.* at 452, 735 A.2d 1003.

In this case, as we noted, the lower court clearly did not comply with the terms of Rule 11–106(b). Although the judge asked Ms. T. if she received a copy of the juvenile petition alleging that her son had committed "some offenses that

would be criminal if he were over the age of eighteen," the court did no more than inform Ms. T. that her son was entitled to an attorney and, if she could not afford to hire an attorney, a public defender could be appointed. This advisement simply did not satisfy the specific dictates of the rule. We can perceive no reason why any lesser or different standard would adhere in the context of a juvenile's waiver of counsel under Md. Rule 11–106 than would attach in a criminal case governed by Rule 2–415. Like Md. Rule 4–215, Md. Rule 11–106 employs the word "shall," which commands compliance.

It is also worth noting that, even if Ms. T.'s conduct constituted a waiver of counsel, we see no basis to find that her conduct amounted to a waiver *by appellant* of his right to legal representation. Although Ms. T. responded to the court's inquiries, the court never posed any questions directly to Christopher, nor did it seek to ensure that he actually understood his right to counsel. The case of *In re Joshua David C.*, 116 Md.App. 580, 698 A.2d 1155 (1997), provides guidance.

There, we reviewed the lower court's denial of a motion to suppress a confession made by a ten-year old who was charged with delinquency. We were persuaded that the youngster did not execute a valid written waiver when he was questioned by the police. *Id.* at 595, 698 A.2d 1155. Although the police reviewed the child's *Miranda* rights with him and his mother, and neither appellant nor his mother requested an attorney, the police chief conceded that he did not think the child understood his *Miranda* rights. *Id.* at 586, 698 A.2d 1155. We noted that "the evidence did not reflect that any effort was made—beyond mere recitation of the [waiver] form—to ensure that appellant (or his mother) really understood the rights or that appellant (or his mother) appreciated the gravity of the circumstances." *Id.* at 595, 698 A.2d 1155. Given the officer's "acknowledgment that appellant did not seem to understand his rights," we concluded that "the mere presence of appellant's mother during the advice of rights d[id] not automatically establish a valid waiver." *Id.* at 595–96, 698 A.2d 1155. Thus, even though "appellant signed the

waiver form in the presence of his mother, we decline[d] to impute to appellant his mother's understanding, if any, of his rights." *Id.* at 596, 698 A.2d 1155.

We also reject the State's contention that we should overlook any error committed below because no prejudice resulted to appellant, inasmuch as the burglary itself and the damage suffered by the victim were uncontested, and the victim did not implicate Christopher. The State suggests that, because Ms. T. was concerned only with the involvement of Christopher, appellant was not harmed by the victim's testimony. Relying on *Moten* and *Parren,* the Court in *Johnson* reiterated that a harmless error analysis is inapplicable in the face of a violation of Rule 4–215. *Johnson,* 355 Md. at 448–49, 735 A.2d 1003; *see Moten,* 339 Md. at 409, 663 A.2d 593; *see also Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."); *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial."); *Chapman v. California,* 386 U.S. 18, 23 n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (recognizing that violation of right to counsel can never be harmless error); *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (vacating conviction, without regard to showing of prejudice, because defendant did not have counsel at preliminary hearing).

Even assuming that the absence of prejudice would overcome such an error, the State's argument is not supported by the record. It is true, as the trial court observed, that on direct examination the victim merely testified to the occurrence and the damage, without saying that appellant "did it." At that juncture, a defense attorney may have opted to leave well enough alone. But, Ms. T. was hardly an effective legal representative for her son. In her unskilled cross-examination, she opened the door to testimony that placed her son at

the scene. Thereafter, the State capitalized on her error in its redirect examination of Mr. Headley. The following colloquy is relevant:

[MS. T.]: Before you left on vacation, was [another juvenile] hanging around your house?

[MR. HEADLEY]: No. *I did see Christopher when we were leaving—your son. He waved at the boys through the van window.*

On redirect examination, the following ensued:

[THE PROSECUTOR]: *Mr. He[a]dley, you said, as you were leaving your house for vacation, you saw Christopher, meaning this respondent?*

[MR. HEADLEY]: *Right.*

[THE PROSECUTOR]: *The one that is sitting here in the blue suit?*

[MR. HEADLEY]: *Right here.*

[THE PROSECUTOR]: The record will reflect the identification. *You saw him hanging around your house?*

[MR. HEADLEY]: *He was right on the street in front of the house, within twenty yards or so.*

(Emphasis added).

As we see it, the inartful cross-examination conducted by Ms. T. serves to highlight the court's error with respect to Rule 11–106. *Cf. Hamilton v. Alabama,* 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (reversing conviction of a defendant arraigned without counsel, because "[o]nly the presence of counsel could have enabled this accused to know all the defenses available to him . . . ."); *Wischhusen,* 342 Md. at 540, 677 A.2d 595 ("Counsel should be present at critical stages of the trial in order to serve the primary purpose of the right to counsel: promoting the accuracy and integrity of the adversarial process.")

## Conclusion

At the hearing on October 2, 1998, the court failed to comply with Rule 11–106(b), because it did not adequately advise

appellant and his mother of appellant's right to counsel. On November 4, 1998, Ms. T. realized that she had made a mistake by failing to secure counsel, and she made clear to the court that she wanted legal representation for her son. Ms. T. explained that she did not initially understand the ramifications of the juvenile proceeding, averring that she did not know "anything about this sort of thing" and "nobody told me too much of anything." Nevertheless, the court opted not to inconvenience the victim by granting a continuance, because Ms. T. "didn't do what [she] was supposed to do."

■ Certainly, we share the trial court's concern for any inconvenience suffered by witnesses, including victims of crime, as a result of court procedures. Nevertheless, we cannot elevate the desire to avoid inconvenience to a victim above the need to protect a juvenile's right to counsel in a delinquency proceeding, particularly when the circumstances giving rise to such inconvenience resulted from the court's failure to comply with a rule intended to protect a fundamental right. Were we to overlook the court's noncompliance with Rule 11–106(b) out of concern for the witness, we would undermine the rule's purpose "to protect the constitutional right to counsel." *Parren*, 309 Md. at 282, 523 A.2d 597. What the Court said in *Parren* is apt here: "[S]uch a holding would enhance complexity rather than secure simplicity in procedure, tend to unfairness rather than fairness in administration, and, in the long run, promote rather than eliminate unjustifiable expense and delay." *Id.*

**JUDGMENT VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR CHARLES COUNTY FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY CHARLES COUNTY.**