877 A.2d 161

**In re BLESSEN H.**

**No. 1641, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

June 30, 2005.

4

6

Michael R. Braudes (Nancy S. Forster, Public Defender, on the brief), Baltimore, for Appellant.

Nancy C. Hopkins (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: DAVIS, KRAUSER and BARBERA, JJ.

BARBERA, Judge.

This appeal presents the question whether a court may declare a child in need of assistance ("CINA") by relying on the parties' agreed upon facts, without an on-the-record knowing and intelligent waiver by the parent of the right to a contested adjudicatory hearing. In this case, appellant, Tynetta H., was present and represented by counsel at a combined CINA adjudication and disposition hearing concerning her daughter, Blessen H. At the hearing, appellant's counsel stated that appellant agreed to the facts contained in the CINA petition prepared by the Montgomery County Department of Health and Human Services ("MDHHS"), and further

agreed that those facts were sufficient to sustain a finding that Blessen should be declared a CINA.

The court accepted this representation and, based on the facts presented, adjudged Blessen a CINA. Then, accepting the parties' recommended disposition, the court ordered that Blessen remain in the care of MDHHS, and that, following the appropriate investigation, she be placed in the home of her paternal grandmother, with visitation by her father, Sheldon A., and appellant.

Appellant challenges the disposition, arguing that the court erred when it relied on her counsel's representation that she agreed to the facts supporting the adjudication. Appellant maintains that the court should have required a personal waiver, akin to that laid out in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), of her right to a contested adjudicatory hearing.

For the reasons that follow, we hold that due process does not require such a strict waiver. Moreover, when, as in this case, the parent is present and represented by counsel, we can presume that counsel has informed the parent of the right to a contested adjudicatory hearing. In the absence of evidence that rebuts this presumption, the court may rely on counsel's representation that his client is prepared to proceed on an agreed statement of facts. Nothing in this case rebutted that presumption. Therefore, the court did not err by accepting counsel's representation and proceeding in accordance with it.

## Background

The issue we consider in this appeal permits us to dispense with a lengthy recitation of the underlying facts and procedural history of this case. It is sufficient to state that appellant and Sheldon A. are the biological parents of Blessen H., who was born on January 16, 2001. In July 2002, MDHHS filed CINA petitions on behalf of Blessen and her two siblings.

MDHHS dismissed these CINA petitions when it learned that Blessen and her siblings were residing in Philadelphia, Pennsylvania, with their mother, and were receiving services

through the Philadelphia Child Protective Services. Eventually, however, that agency removed the children from appellant's care. Blessen was placed in the care of Sheldon A., a resident of Montgomery County. Blessen later resided with Sheldon A.'s mother in New Jersey. After a time, appellant and her mother, Rose G., traveled to New Jersey and took custody of Blessen by using an expired document granting Rose G. temporary custody of the child.

On July 29, 2003, MDHHS filed, in the Circuit Court for Montgomery County, a petition for shelter care and declaration of Blessen as a CINA. A shelter care hearing occurred that day, and the court issued a juvenile warrant for Blessen. Two days later, the authorities located Blessen in Georgia, in appellant's custody. Blessen was brought back to Maryland on August 5, 2003.

At the shelter care hearing the next day, Blessen was placed into foster care. The court issued an order five days later preventing Rose G. from having any contact with Blessen because of her involvement in the child's removal from the custody of Sheldon A.

### The CINA determination and disposition

A combined adjudication and disposition hearing on the CINA petition commenced on September 2, 2003. Appellant (and her counsel), MDHHS, counsel for Blessen, and Sheldon A. (appearing *pro se* ) were present.

At the outset, counsel for MDHHS informed the court that preliminary discussions had occurred between the parties. Counsel for MDHHS noted that counsel for appellant had indicated that appellant "was not of a mind ... to reach an agreement," but might be interested in mediation. After a brief discussion with appellant, counsel informed the court that appellant was willing to participate in mediation. Mediators were available, so the court suggested that the parties mediate that afternoon, "give it an hour, and if nothing is happening, [ ] come back for trial[.]"

The case was recalled that afternoon, and counsel for MDHHS announced that the parties had reached an agreement "based on an amended [CINA] petition." The court reviewed the amended petition, asked the parties some questions about the amended facts, and made several suggestions for changes to the petition. While certain clarifying changes to the petition were being made, the court ensured that all parties were in agreement that the facts in it would form the basis for the court's finding Blessen a CINA:

THE COURT: While you do that, is it everyone's position, then, that these facts should be sustained and form the basis for a finding of CINA?

[COUNSEL FOR BLESSEN]: Yes, Your Honor.

[COUNSEL FOR APPELLANT]: Yes, Your Honor.

[SHELDON A.]: Yes, Your Honor.

THE COURT: All right. I will make such a finding, that based on the agreement of all counsel and parties, because [Sheldon A.] is here without counsel, that the facts alleged are now facts sustained, and they form a basis for a finding of CINA, and I will so find, that the child Blessen is a child in need of assistance.

Next, the court asked the parties to state their agreed upon recommendations for disposition. During this discussion, appellant personally objected to the continuation of the "no contact" order against Rose G. The court heard from appellant's counsel on this aspect of the disposition. There followed a fairly lengthy discussion among counsel for appellant, MDHHS and the court about the precise circumstances under which Rose G. and appellant had taken custody of Blessen in New Jersey. The court was convinced that Rose G. had helped appellant "snatch" Blessen, and so decided to continue the "no contact" order, for the time being.

The court then asked counsel for appellant, "[a]nything else? That was the only thing that you were contesting[?]" Counsel raised no concerns, and appellant did not at that time interject any comment or further objection.

The court then rendered its disposition, which, save for appellant's objection to the continued "no contact" order, reflected the parties' agreement. The court ordered that Blessen remain in foster care under the custody of MDHHS; that an Interstate Compact evaluation be performed on the home of Sheldon A.'s mother in New Jersey; and that, upon approval of that home, Blessen be placed there. The court granted Sheldon A. a minimum of weekly supervised visitation while Blessen remained in foster care in Maryland, and unlimited, unsupervised visitation once she resided with his mother in New Jersey. The court granted appellant, who resided in Georgia, a minimum of supervised visitation for three hours a month, if she traveled from Georgia for one day, and for two hours for each of two consecutive days a month, if she traveled to Maryland for a longer period.[1]

Just before the close of proceedings, as the court was explaining its disposition to appellant's mother, appellant interjected that she was "slandered by [MDHHS]," does not "deserve this," and has "been the best mother [she] can be." She questioned why the court had not asked about her "character," why she had been "traveling" with Blessen, and why Blessen was "not in a stable home."

The court responded that appellant was represented by her attorney, to whom the court had been "listening." Without further discussion of appellant's comments, and not hearing further from appellant or her counsel, the court concluded the proceedings.

This appeal followed.

## DISCUSSION

### The law governing CINA proceedings

A "child in need of assistance" is defined in Maryland as: a child who requires court intervention because:

---

1. Although the court did not mention it at the hearing, the court also ordered appellant to undergo a mental health evaluation, and both parents to attend parenting classes.

(1) The child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and

(2) The child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs.

Md. Code (1973, 2002 Repl. Vol.), § 3–801(f) of the Courts and Judicial Proceedings Article ("CJ").[2]

A CINA petition may be filed by a local department, such as MDHHS, upon the "receipt of a complaint from a person or agency having knowledge of facts" indicating that a child may be in need of assistance. CJ § 3–809(a). Once a CINA petition is filed, CJ § 3–817(a) and (c) require that an adjudicatory hearing on the allegations listed in the petition be held and that the allegations be proven by a preponderance of the evidence. If the allegations are sustained, CJ § 3–819 provides that a disposition hearing must be promptly scheduled. Generally, the disposition hearing is conducted immediately after the adjudicatory hearing.

Although the law provides for a contested CINA adjudicatory hearing, none of the provisions we have cited, and no other statutory or rule provision that we have found, states that the right to this hearing can be waived only by a parent's knowing and intelligent waiver of the hearing. Further, as we shall discuss in greater detail, *infra*, we have uncovered no cases that mandate this strict waiver as a matter of due process.

### The *Johnson v. Zerbst* waiver standard

As we have mentioned, appellant takes the position that her right as a parent to a contested CINA adjudicatory hearing can be foregone only if the court first assures itself, through an on-the-record inquiry, that she has knowingly and intelligently waived that right. This waiver standard is well known in the criminal law context, and, as we mentioned at the

---

**2.** This version of the Courts and Judicial Proceedings Article was in effect at the time of these proceedings. Hereinafter all references are to this version of the Article.

outset, derives from the Supreme Court's decision in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

In that case, the Supreme Court made clear that the standard for the waiver of constitutional rights that are "fundamental" is "an intentional relinquishment or abandonment of a known right or privilege." *Id.* at 464, 58 S.Ct. 1019. The Court explained: " '[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights and [ ] we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Id.* (citations and footnote omitted). The waiver, moreover, must be "intelligent and competent" and must appear on the record, so the court can decide for itself whether the waiver is sufficient. *Id.* at 465, 58 S.Ct. 1019. The Court held that a criminal defendant's waiver of his Sixth Amendment right to be represented by counsel is valid only if accompanied by this form of waiver. *Id.* at 468–69, 58 S.Ct. 1019.

Since *Johnson v. Zerbst* was decided, the waiver standard developed in that case has been held to apply in other criminal law contexts. The standard applies to a defendant's waiver of the rights to a jury trial and to confront adverse witnesses; to the privilege against compelled self-incrimination; and to the protection against double jeopardy. *See Hersch v. State,* 317 Md. 200, 206, 562 A.2d 1254 (1989) (collecting Supreme Court and Maryland cases); *Parker v. State,* 160 Md.App. 672, 684–86, 866 A.2d 885 (2005) (same). A guilty plea likewise requires a defendant's knowing and intelligent waiver of the trial-related constitutional rights. *Hersch,* 317 Md. at 206, 562 A.2d 1254.

The *Johnson v. Zerbst* waiver standard also applies "to the waiver of the important right that [a] probationer has to put the State to its proof." *Id.* at 208–09, 562 A.2d 1254. This is because a probation violation proceeding, though civil, is like a criminal trial in that "the immediate consequence of a violation of probation may well be imprisonment[.]" *Id.* at 208, 562 A.2d 1254.

■■ Likewise, a juvenile facing delinquency proceedings has a right to counsel that can only be waived knowingly and intelligently. *See In re Gault*, 387 U.S. 1, 42, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In re Christopher T.*, 129 Md.App. 28, 34, 740 A.2d 69 (1999); *In re Appeal No. 101*, 34 Md.App. 1, 5–8, 366 A.2d 392 (1976). Further, a juvenile cannot be interrogated by police without first being apprised of, and knowingly and intelligently waiving, his rights to silence and to counsel. *In re Gault*, 387 U.S. at 55, 87 S.Ct. 1428.

■ Each of the above situations, whether criminal or civil, involves the direct consequence of loss of liberty. And, in each situation, the right waived is deemed to be fundamental to the fairness of that proceeding. " 'Fundamental rights have been defined as being, almost without exception, basic rights of a constitutional origin, whether federal or state, that have been guaranteed to a criminal defendant in order to preserve a fair trial and the reliability of the truth-determining process.' " *State v. Torres*, 86 Md.App. 560, 567, 587 A.2d 582 (1991) (quoting *Wyche v. State*, 53 Md.App. 403, 406, 454 A.2d 378 (1983)). In short, the nature of the right waived and the consequences of the proceeding dictate the application of the *Johnson v. Zerbst* waiver standard.

■ The *Johnson v. Zerbst* waiver standard does not apply, for example, to civil contempt proceedings, because there is no immediate threat of incarceration. Rather, "[i]mprisonment of the civil contemnor is conditional" because the civil contemnor "hold[s] the keys to the jailhouse door, and may terminate the incarceration any time he or she satisfies the purge provision." *Jones v. State*, 351 Md. 264, 277, 718 A.2d 222 (1998). And, "even in criminal proceedings, the realities and necessities of modern day litigation often augur in favor of binding a defendant to the action and inaction of counsel taken with the knowledge and apparent acquiescence of the defendant." *Hersch*, 317 Md. at 208, 562 A.2d 1254; *accord Williams v. State*, 292 Md. 201, 218, 438 A.2d 1301 (1981). Consequently, the case law to date in Maryland reflects that, unless the right is deemed fundamental to a

criminal defendant's right to a fair trial or other proceeding that could directly lead to incarceration, the *Johnson v. Zerbst* waiver standard simply does not come into play. *See Torres,* 86 Md.App. at 566–67, 587 A.2d 582.

### The parties' contentions

The current state of the law notwithstanding, appellant urges application of the *Johnson v. Zerbst* standard to waiver of a contested CINA adjudicatory hearing. Her argument has two steps. She argues, first, that the standard applies to waiver of the right to a contested hearing before termination of parental rights ("TPR"), because these proceedings involve the potential loss of a parent's fundamental right to raise his or her child. Taking this premise as established, appellant then contends that CINA proceedings, like TPR proceedings, are actions that involve the deprivation of a parent's right to custody of the child, so the *Johnson v. Zerbst* standard should also apply to waiver of a contested CINA hearing.

MDHHS attacks appellant's argument at its premise, arguing that the *Johnson v. Zerbst* waiver standard does not apply to TPR proceedings. MDHHS points to the distinction between situations that have the consequence of an individual's loss of personal liberty, and the TPR context, at which a parent faces the loss of his or her parental rights, yet, the paramount concern is safeguarding the best interest of the child. MDHHS further argues that, even assuming the *Johnson v. Zerbst* waiver standard applies to TPR proceedings, it does not apply to CINA proceedings, at which the parent does not face severance of the parent-child relationship.

As we shall discuss, MDHHS has the better part of the argument.

### TPR and CINA proceedings: different in kind and effect

It is unnecessary to consider the premise of appellant's argument, that the *Johnson v. Zerbst* standard applies to

waiver of a contested TPR hearing.[3] Even if that were so, the question presented by this case is whether this strict waiver standard applies to the waiver of a contested CINA adjudicatory hearing.

■ We begin by noting the obvious distinction between a CINA proceeding, on the one hand, and criminal trials, probation revocation hearings, and juvenile delinquency proceedings, on the other. The latter three types of proceedings, of course, are punitive and carry incarceration as a direct consequence. CINA actions, by contrast, are non-punitive, civil actions. And their purpose is to protect the best interest of the child in question.

To be sure, a CINA adjudication could lead to an infringement of a parent's important right to raise his or her child. The Supreme Court has long recognized that parents have a constitutionally protected "fundamental" right to raise their children as they choose, without excessive interference from the State. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Lassiter v. Dept. of Social Serv.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *see also McDermott v. Dougherty*, 385 Md. 320, 334–51, 869 A.2d 751 (2005) (discussing Supreme Court cases). " 'Maryland has consistently echoed the Supreme Court, declaring a parent's liberty interest in raising a child a fundamental one that cannot be taken away unless clearly justified.' " *In re Yve S.*, 373 Md. 551, 566, 819 A.2d 1030 (2003) (quoting *Wolinski v. Browneller*, 115 Md.App. 285, 298, 693 A.2d 30 (1997)); *accord In re Billy W.*, 386 Md. 675, 874 A.2d 423, 428 (2005); *In re Adoption/Guardianship of Victor A.*, 386 Md. 288, 300, 872 A.2d 662 (2005); *In re Nathaniel A.*, 160 Md.App. 581, 594, 864 A.2d 1066, *cert. denied*, 386 Md. 181, 872 A.2d 47 (2005).

---

3. Our silence on this question is by no means intended to suggest an answer to it.

■ Consequently, any proceeding involving an intrusion upon that fundamental right must comport with due process. The Court of Appeals has made this plain:

> *Lassiter, Santosky*, and their progeny recognize three basic principles: (1) parents have a fundamental liberty interest in the care, custody, and management of their children, (2) when the State moves to abrogate that interest, it must provide the parents with fundamentally fair procedures, and (3) the process due to parents in that circumstance turns on a balancing of the three factors specified in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), *i.e.*, the private interests affected by the proceeding, the risk of error created by the State's chosen procedure, and the countervailing governmental interest supporting the use of the challenged procedure.

*In re Adoption No. 93321055*, 344 Md. 458, 491, 687 A.2d 681, *cert. denied*, 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997).

■ For example, due process demands that TPR proceedings, which, unlike CINA proceedings, involve the permanent severance of the parent-child relationship, can only result in the termination of a parent's rights on a "clear and convincing" standard of proof, rather than the lesser "preponderance of the evidence" standard that attends CINA adjudications. *See Santosky*, 455 U.S. at 768–70, 102 S.Ct. 1388. Even so, the higher standard of proof of "beyond a reasonable doubt" is not required, because the "clear and convincing" evidentiary "standard adequately conveys to the factfinder the level of subjective certainty . . . necessary to satisfy due process." *Id.* at 769, 102 S.Ct. 1388.

The Supreme Court has also recognized that fundamental fairness *might* require, in a given TPR case, that an indigent parent be appointed counsel. Yet, the Court declined to "say that the Constitution requires the appointment of counsel in every parental termination proceeding."[4] *Lassiter*, 452 U.S.

---

4. The *Lassiter* Court nevertheless emphasized that "[a] wise public policy, however, may require that higher standards be adopted than

at 31, 101 S.Ct. 2153.

Further, the Court of Appeals has held that due process is not offended by the statutory scheme in Maryland that a parent is deemed, by operation of law, to have consented to the termination of his or her parental rights by failing to file a timely objection. *In re Adoption No. 93321055,* 344 Md. at 494, 687 A.2d 681. Implicit in this holding is that waiver of the right to object to the termination of parental rights does not require a *Johnson v. Zerbst* waiver by the parent.

■■■■■ The cases make plain that process is due a parent who faces the permanent loss of his or her parental ties to the child at a TPR proceeding, but certainly not the degree of process due a criminal defendant, probationer, or alleged juvenile delinquent who faces the loss of personal liberty. A parent is also entitled to due process at a CINA proceeding, because the parent faces at least the temporary loss of the child. *See Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). The distinctions between CINA and TPR proceedings, however, dictate the conclusion that even *less* process is due a parent at the CINA stage than at the TPR stage.

Both TPR and CINA proceedings involve the State's intervention into the parent-child relationship. Both, moreover, have the overarching goal of safeguarding the best interest of the child. *See In re Nathaniel A.,* 160 Md.App. at 594, 864 A.2d 1066. Yet, the specific purpose of each proceeding is quite different from the other.

---

those minimally tolerable under the Constitution." 452 U.S. at 33, 101 S.Ct. 2153. Under certain circumstances, Maryland provides for Public Defender representation of indigent parents at TPR proceedings, *see* Maryland Code (1984, 2004 Repl. Vol.), § 5–323(b)(1) of the Family Law Article, and at CINA proceedings, *see* CJ § 3–813(c).

 CINA proceedings are designed "[t]o provide for the care, protection, safety, and mental and physical development" of a child found to be in need of assistance, *"[t]o conserve and strengthen the child's family ties*[.]" CJ § 3–802(a) (emphasis added). These proceedings do not seek to sever the parent-child relationship. Though the parent and child are sometimes separated ·for the child's welfare, CJ § 3–802(a)(3), the desired goal is reunification, *see* CJ § 3–802(a)(5). Even once a child is declared CINA and is placed in an out-of-home placement, a permanency plan hearing must be held within 11 months. CJ § 3–823(b). At this hearing, the court determines the child's permanency plan, which includes, as the first option, "[r]eunification with the parent or guardian[.]" CJ § 3–823(e)(1).

 TPR proceedings, by contrast, are initiated only when the " *'prima facie* presumption that a child's welfare will be best served in the care and custody of its parents' " is overcome by a " 'show[ing] that the natural parent is unfit to have custody, or exceptional circumstances make parental custody detrimental to the best interests of the child.' " *In re Yve S.*, 373 Md. at 572, 819 A.2d 1030 (quoting *Wolinski*, 115 Md.App. at 311, 693 A.2d 30). TPR proceedings are initiated as a last resort and only after efforts to reunify the parent and child, who likely has previously been adjudicated a CINA, have failed. *See id.* at 575–76, 819 A.2d 1030; *see also In re Adoption No. 93321055*, 344 Md. at 477, 687 A.2d 681.

 In sum, the cases reflect that a parent is entitled to due process at a CINA adjudicatory hearing, but the process due is less than that owed a parent at a TPR hearing and still less than that owed an individual who faces the loss of personal liberty. We turn now to what due process demands of the waiver by a parent of the right to a contested CINA adjudicatory hearing.

### The proper waiver standard

 "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time,

place and circumstances. [D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334, 96 S.Ct. 893 (citations and internal quotation marks omitted). What process is due in a particular situation is determined by reference to three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893. *See In re Adoption No. 93321055*, 344 Md. at 491–94, 687 A.2d 681 (applying the *Mathews* factors).

Appellant asserts that due process requires a *Johnson v. Zerbst* waiver of a contested CINA adjudicatory hearing. And though she does not spell out the procedure she believes would comply with this waiver standard, we assume it would be comparable to the waiver procedure attendant to a guilty plea in a criminal case. In the guilty plea context, the court must assure itself, through an examination of the defendant in open court, "that the [waiver] is made voluntarily, with understanding of the nature of the charge and the consequences of the [waiver]." *Sutton v. State*, 289 Md. 359, 368, 424 A.2d 755 (1981) (internal quotation marks and citation omitted). Application of the *Mathews* factors to this case, however, does not lead to the conclusion sought by appellant.

 The parent's interest at a CINA proceeding is the unfettered right to raise his or her child. *Lassiter*, 452 U.S. at 27, 101 S.Ct. 2153 ("This Court's decisions have by now made plain ... that a parent's desire for and right to 'the companionship, care, custody and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.'") (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92

S.Ct. 1208, 31 L.Ed.2d 551 (1972)). Without doubt, this is an important interest. At the same time, the determination of a child as a CINA does not automatically deprive the parent of even temporary custody of the child, and it certainly does not permanently sever the parent-child relationship.

As for the second *Mathews* factor, there is little, if any, risk of error in a procedure that permits the court to accept a parent's waiver of a contested CINA hearing on the basis of reliable indicia of waiver, such as counsel's statement to that effect in the parent's presence. Indeed, so long as the circumstances do not indicate to the contrary, we can presume that counsel has informed his client of the right to a contested hearing and the nature of it. *Cf. Tilghman v. State*, 117 Md.App. 542, 554–55, 701 A.2d 847 (1997) (stating that "Maryland law recognizes a presumption, premised on the permitted inference that attorneys, as officers of the court, do as the law and their duty require them, that a represented defendant has been told of his constitutional rights, by his attorney"), *cert. denied*, 349 Md. 104, 707 A.2d 90 (1998) (citation and internal quotation marks omitted).

As for the third factor, the State has an urgent interest in safeguarding the child's best interests. *See In re Yve S.*, 373 Md. at 570, 819 A.2d 1030. Nevertheless, this interest should not be furthered at the expense of an unfair proceeding. *See Lassiter*, 452 U.S. at 27–28, 101 S.Ct. 2153.

 Balancing these factors, we hold that due process does not require a *Johnson v. Zerbst*-type waiver of a contested CINA adjudicatory hearing. Rather, due process is satisfied by the court's ascertaining, from the totality of the circumstances, that the parent desires to forego a contested hearing. When the parent is represented by counsel, the court may rely upon the representations of the parent's counsel, "taken with the knowledge and apparent acquiescence of the [parent]," *Hersch*, 317 Md. at 208, 562 A.2d 1254, that the parent desires to waive a contested hearing. In this regard, the court may presume that counsel has informed the parent

of the right to a contested hearing and what the hearing would entail.

### This case

██ The standard for waiver of a contested adjudicatory hearing was satisfied in this case. As appellant acknowledges, her attorney expressly agreed, on the record, that the amended CINA petition should serve as the basis for the court's finding that Blessen was a CINA. Appellant was present, and the court could reasonably assume from her silence that she agreed with her counsel's representation that the facts were not contested.

To the extent that appellant had any concern about what her counsel advised the court, she had every opportunity to protest. Indeed, she did protest, at the close of the disposition stage of the proceedings, about the "no contact" order against her mother, and she quarreled with the court's failure to inquire about her "own character," the circumstances surrounding her situation, and why Blessen was not in a "stable home." Notably, even then, appellant did not intimate any concern about the agreed upon facts supporting adjudication of Blessen as a CINA.

We are persuaded that appellant waived her right to a contested hearing on the CINA petition. In the absence of any indication to the contrary, the court was free to rely on the presumption that counsel fully advised appellant of the nature of a contested adjudicatory hearing and her right to one. The court committed no error in accepting counsel's representation that appellant agreed to the facts and stipulated that they supported a CINA finding. There is, then, no cause to disturb either the court's adjudication of Blessen as a CINA, or its resulting disposition.

**JUDGMENT AFFIRMED.**

**COST TO BE PAID BY APPELLANT.**